**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE MATTER OF THE *EX PARTE* APPLICATION OF CHINA CONSTRUCTION BANK (ASIA) CORPORATION LIMITED FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Case No. 23-mc-17 |

**MEMORANDUM OF LAW**
**IN SUPPORT OF THE *EX PARTE* APPLICATION OF**
**CHINA CONSTRUCTION BANK (ASIA) CORPORATION LIMITED**
**<u>FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782</u>**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................................... iii

**PRELIMINARY STATEMENT** ............................................................................................ 1

**FACTUAL BACKGROUND** .................................................................................................. 3

I.   Parties to Foreign Proceedings: Zhang, Suning Group, and Inter Milan. ........................... 3

II.  Zhang acquires a Suning subsidiary by borrowing,
     and then failing to repay, more than US $250 million. ....................................................... 4

III. A Hong Kong court enters judgment against Zhang
     for breach of the agreements, but he has refused to pay that judgment. .............................. 7

IV.  CCBA commences further judicial proceedings
     in Italy and Hong Kong, and it plans to commence more. ................................................... 8

     A.  Hong Kong Proceedings. .............................................................................................. 8

     B.  Italian Proceedings. ...................................................................................................... 10

**JURISDICTION AND VENUE** ............................................................................................ 12

**PARTIES** ................................................................................................................................. 12

I.   Applicant .............................................................................................................................. 12

II.  Proposed Subpoena Respondents ......................................................................................... 12

**ARGUMENT** ........................................................................................................................... 14

I.   The application fulfills the statutory requirements of 28 U.S.C. § 1782. ........................... 15

     A.  The proposed subpoena Respondents are found in this District. ................................. 15

     B.  CCBA seeks discovery "for use" in foreign proceedings. ........................................... 17

     C.  The application is made by an interested person in foreign proceedings. .................... 22

II.  All four *Intel* factors favor granting CCBA's application. ................................................ 22

     A.  The Respondents are not parties to the foreign proceedings. ...................................... 22

     B.  The requested discovery is admissible in the foreign proceedings. ............................. 22

     C.  The Application will not circumvent foreign
         proof-gathering restrictions or other policies. ............................................................. 23

     D.  The application is not unduly burdensome or overly intrusive. .................................... 24

     **CONCLUSION** ............................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Euromepa, S.A. v. R. Esmerian, Inc.*,
   154 F.3d 24 (2d Cir. 1998) ................................................................................ 21

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
   27 F.4th 136 (2d Cir. 2022) ..................................................................... 14, 21

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ...................................................................................... 16

*Gushlak v. Gushlak*,
   486 F. App'x 215 (2d Cir. 2012) ................................................................. 1, 14

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
   33 F.4th 669 (2d Cir. 2022) .............................................................................. 18

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017) ...................................................................... 19, 20

*In re Accent Delight Int'l Ltd.*,
   791 F. App'x 247 (2d Cir. 2019) ...................................................................... 15

*In re Banco Santander (Brasil) S.A.*,
   No. 22-mc-22 (ALC)(SN), 2022 WL 1546663 (S.D.N.Y. Apr. 6, 2022) ........... 17, 25

*In re Bank Otkritie Fin. Corp.*,
   No. 22-mc-50 (VSB), 2022 WL 2384169 (S.D.N.Y. July 1, 2022) ......................... 19

*In re Degens*,
   No. 20-mc-237 (JGK)(RWL), 2020 WL 4252725 (S.D.N.Y. July 24, 2020) ......................... 16

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019) ...................................................................... 14, 15

*In re Doosan Heavy Indus. & Constr. Co., Ltd.*,
   No. 19-mc-1638 (LDH), 2020 WL 1864903 (E.D.N.Y. Apr. 14, 2020) .................................. 21

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002) .............................................................................. 14

*In re Eli Lilly & Co.*,
   580 F. Supp. 3d 334 (E.D. Va. 2022) ............................................................... 16

iii

*In re Furstenberg Fin. SAS*,
　785 F. App'x 882 (2d Cir. 2019) ............................................................................ 18

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*,
　No. M19-cv-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ...................................... 22

*In re Hornbeam Corp.*,
　No. 14-mc-424 (Part 1)(VSB), 2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015) ........................ 1

*In re Hornbeam Corp.*,
　722 F. App'x 7 (2d Cir. 2018) ................................................................................. 1

*In re Kuwait Ports Auth.*,
　No. 20-mc-46 (ALC), 2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ...................................... 17

*In re Lane*,
　No. 22-mc-34 (LGS), 2022 WL 16737132 (S.D.N.Y. Nov. 7, 2022) ...................................... 17

*In re Lake Holding & Fin. S.A.*,
　No. 20-mc-652 (RA)(KNF), 2021 WL 2581427 (S.D.N.Y. June 23, 2021) ...................... 17, 19

*In re Mariani*,
　No. 20-mc-152 (JGK)(GWG), 2020 WL 1887855 (S.D.N.Y. Apr. 16, 2020) ........................ 23

*In re Metallgesellschaft AG*,
　121 F.3d 77 (2d. Cir. 1997) .......................................................................... 15, 23

*In re O'Keeffe*,
　650 F. App'x 83 (2d Cir. 2016) ............................................................................ 23

*In re Sampedro*,
　No. 3:18-mc-47, 2018 WL 5630586 (D. Conn. Oct. 30, 2018) ............................................ 19

*In re Sumar*,
　123 F.R.D. 467 (S.D.N.Y. 1988) ............................................................................ 24

*In re Top Matrix Holdings Ltd.*,
　No. 18-mc-456 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ........................................ 23

*In re WildBrain Family Int'l Ltd.*,
　No. 19-mc-527 (JPO), 2020 WL 6135765 (S.D.N.Y. Oct. 19, 2020) .................................... 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
　542 U.S. 241 (2004) .................................................................................. *passim*

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
   895 F.3d 238 (2d Cir. 2018) ................................................................ 15

*McCarthy v. Johnson*,
   No. 21-mc-4 (GMH), 2022 WL 16834019 (D.D.C. Nov. 9, 2022) ......................... 21

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ............................................... 14, 18, 24, 25

*Nike, Inc. v. Wu*,
   349 F. Supp 3d. 346 (S.D.N.Y 2018) ..................................................... 17

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,
   376 F.3d 79 (2d Cir. 2004) ............................................................. 15, 21

**Statutes & Rules**

28 U.S.C. § 1331 .......................................................................... 12

28 U.S.C. § 1391 .......................................................................... 12

28 U.S.C. § 1782 ...................................................................... *passim*

Cal. Civ. Proc. Code § 708.110(a) ......................................................... 19

Fed. R. Civ. P. 45(c)(3) ................................................................... 1

Fed. R. Civ. P. 26 ........................................................................ 24

Ill. Sup. Ct. R. 277(c)(3)-(4) ............................................................ 19

## PRELIMINARY STATEMENT

Zhang Kangyang ("Zhang") now owes more than US $300 million to China Construction Bank (Asia) Corporation Limited, as the security agent, facility agent, and note trustee for debts that Zhang incurred in 2020 ("CCBA" or "Applicant").[1] CCBA has already commenced legal proceedings in Italy and Hong Kong to collect what it is owed, and earlier this month a debtor examination of Zhang was scheduled to take place in just two months, on *March 13, 2023*. Now, CCBA respectfully requests that this Court enter an *ex parte* order pursuant to 28 U.S.C. § 1782 ("Section 1782") allowing it to seek discovery from financial institutions and financial advisors found in this District so that the evidence may be used in the various foreign proceedings that are currently underway or that will soon be commenced, including the upcoming debtor examination in the Hong Kong court.[2] Congress enacted Section 1782 precisely for situations of this sort— where U.S. persons have evidence that will aid foreign courts—and CCBA respectfully requests that this Court exercise its discretion to grant the *ex parte* order and authorize service of the proposed subpoenas.

Zhang owned and controlled a company that borrowed money in 2020 to refinance debts it had incurred for a 2019 corporate transaction. This 2020 refinancing resulted in a US $165 million loan and US $85 million notes that were due to be repaid to CCBA in 2021.

Those debts have not been repaid. Zhang personally guaranteed the debts, but he has refused to repay them. Meanwhile, Zhang serves as the President of a prominent Italian soccer

---

[1] CCBA, as used below in reference to this Application and the foreign litigations described below, is acting on the instructions of such creditors.

[2] "It is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012). "District courts may and customarily do resolve applications for discovery pursuant to § 1782 through *ex parte* proceedings." *In re Hornbeam Corp.*, No. 14-mc-424 (VSB), 2015 WL 13647606, at *4 (S.D.N.Y. Sept. 17, 2015) (collecting cases), *aff'd*, *In re Hornbeam Corp.*, 722 F. App'x 7 (2d Cir. 2018). If the application is granted, Applicant will promptly serve the subpoenas, at which point the respondents will have the opportunity to object.

team—Inter Milan FC—under a highly unusual shareholder's resolution of appointment that eschews *any* direct compensation for Zhang's services. As alleged in the pending civil action in Italy, Zhang appears to have structured his appointment terms so to hinder creditors from garnishing his salary to satisfy his personal debts.

CCBA seeks evidence in this District for use in Italian and Hong Kong legal proceedings. In Italy, CCBA seeks to render ineffective the unusual shareholder's resolution regarding Zhang's appointment and to establish Zhang's rights to assets and compensation that may be used to satisfy the debt that he owes. In Hong Kong, a court has adjudicated Zhang's liability for the debt at issue, and CCBA will examine Zhang under oath in a debtor examination proceeding on March 13, 2023. Additionally, CCBA will apply to have Zhang committed for contempt of the Hong Kong court due to his false sworn statements in the proceedings leading to entry of the Hong Kong judgment. As explained further below, this application seeks evidence that CCBA will use to assist the non-U.S. courts in determining Zhang's relationship with Inter Milan, as well as ascertaining his assets available to satisfy the Hong Kong judgment and the anticipated Italian recognition of that judgment.

This application satisfies each of Section 1782's statutory requirements because CCBA is an interested person in the pending and contemplated Italian and Hong Kong proceedings, and because CCBA seeks discovery from entities found in this District for use in those proceedings. Since the application satisfies the threshold requirements of the statute, the Court should grant this application because all four of the discretionary factors identified by the U.S. Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc*. weigh heavily in favor of granting discovery here. *See* 542 U.S. 241, 264-65 (2004). As such, CCBA respectfully requests that the Court enter the proposed order and allow it to serve the proposed subpoenas.

## FACTUAL BACKGROUND

**I.      Parties to Foreign Proceedings: Zhang, Suning Group, and Inter Milan.**

Zhang Kangyang, also known as Steven Zhang, is a director of Suning.com Co., Ltd. ("Suning.com"), a publicly traded retail, e-commerce, and logistics conglomerate operating across the People's Republic of China ("PRC"), Hong Kong, and Japan. *See* Declaration of Ip Wing Hang Francesca ("Ip Decl."), Ex. 1 at 3[3] (noting Zhang's election as director). Suning.com is one of the largest companies in China, and it has been listed on the Fortune Global 500 for four consecutive years. *See* Ip Decl., Exs. 2 & 3.

Zhang's father, Zhang Jindong, founded the Suning group of companies in 1990. Today, Zhang is the heir apparent to his father's business empire. After attending high school in the United States and receiving a bachelor's degree from the Wharton School at the University of Pennsylvania, he worked as an investment banker at Morgan Stanley before joining the family business. *See* Ip Decl., Ex. 4 at 3 (describing Zhang's background). Zhang's social media accounts display the immense wealth at his disposal, including photographs of at least three luxury sports cars with a total value exceeding US $8 million, as well as luxury watches with a total value of close to US $1.5 million. *See* Ip Decl., Ex. 5 (social media posts); Ip Decl. ¶ 12 (assessing apparent value of cars and watches).

Outside of China, the Suning Group is perhaps best known for acquiring a 70% stake in F.C. Internazionale Milano S.p.A ("Inter Milan"), an Italian soccer team with a worldwide following based in Milan. *See* Ip Decl., Ex. 6 at 2 (June 2016 *Reuters* article). After Suning purchased its controlling stake in Inter Milan for US $307 million, Zhang oversaw the soccer team's operations, and he became President of the club in 2018. *See* Ip Decl., Ex. 7 at 3.

---

[3] All exhibit page pincites are to the page number of the PDFs, which correspond to page numbers assigned by the Court's electronic filing system at the top of each page.

## II.    Zhang acquires a Suning subsidiary by borrowing, and then failing to repay, more than US $250 million.

In 2019, Zhang acquired a 65% interest in one of Suning.com's consumer-facing subsidiaries, Suning Xiaodian, which runs thousands of convenience stores in China. *See* Ip Decl., Ex. 8. Zhang acquired this interest through two British Virgin Islands companies that he owns and controls and in which he is the sole shareholder: Great Matrix Limited ("Great Matrix") and Great Momentum Limited ("Great Momentum"). *See id.* at 2.

Through the "Xiaodian Project," as this transaction was known, Suning Smart Life Holding Limited ("Suning Smart Life") acquired all of Suning Xiaodian's shares from Suning.com for approximately US $108.9 million. Ip Decl., Ex. 8 at 2. Zhang's two companies—Great Matrix and Great Momentum—controlled 65% of Suning Smart Life, and thus 65% of Suning Xiaodian. *See* Ip Decl., Exs. 8 at 2 & 9 at 7. The remaining 35% of Suning Smart Life was held by Suning.com. *Id.*

Great Matrix financed the US $108.9 million price of the Xiaodian Project by taking out debt, which it refinanced one year later in 2020 through two simultaneous transactions, both put in place by documents dated August 20, 2020. *See* Ip Decl., Ex. 10 (the "First Affidavit of Pui Chan Rita Sit") ¶ 9 (summarizing the relevant transactions).

In the first 2020 restructuring transaction, Great Matrix as borrower entered into a US $165 million credit facility agreement, with CCBA acting as facility agent and security agent (the "Facility Agreement"). *See id.* ¶ 9(a). The Facility Agreement included three guarantors: Suning Appliance Group Co., Limited ("Suning Appliance"), a different Suning group company; Zhang's father; and Zhang himself. *See id.*; *see also* Ip Decl., Ex. 11 (the "Amended Statement of Claim in the Hong Kong Action") ¶ 8. Great Matrix drew on this credit facility on September 21, 2020, by submitting an irrevocable utilization request to CCBA for the full amount of

US $165 million. *See* Amended Statement of Claim in the Hong Kong Action ¶ 11. Under the terms of the Facility Agreement, the loan would ordinarily mature and fall due on September 10, 2021. *See* First Affidavit of Pui Chan Rita Sit ¶ 11(b).

Second, Great Matrix as issuer entered into a note subscription agreement for up to US $85 million of notes (the "Note Subscription Agreement"). *See id.* ¶ 9(b). Again, CCBA served as security agent, and Suning Appliance, Zhang's father, and Zhang guaranteed the debt. *See id.* On September 25, 2020, Great Matrix entered into a trust deed under which CCBA would serve as trustee for US $85 million notes (the "Trust Deed," and together with the Note Subscription Agreement, the "Note Documents"). *See* Amended Statement of Claim in the Hong Kong Action ¶ 14. Just like the Facility Agreement, Suning Appliance, Zhang, and his father were all guarantors under the Note Documents. *See id.* Great Matrix issued the notes for US $85 million on September 25, 2020, just four days after it borrowed money under the Facility Agreement. *Compare id.* ¶ 14 *with* ¶ 11 (noting the September 25 notes issuance and September 21 irrevocable utilization request). Under the terms of the Trust Deed, these notes would come due on the same day as the debt under the Facility Agreement: here, Great Matrix would be required to redeem all the notes on September 10, 2021. *See* First Affidavit of Pui Chan Rita Sit ¶ 11(b).

Zhang was personally liable for the debts incurred by Great Matrix in the 2020 refinancings. Not only did he sign the Facility Agreement and Note Documents as a guarantor, as discussed above, Zhang entered into three separate agreements making him personally responsible for repaying Great Matrix's debts. Under an August 20, 2020 intercreditor agreement, Zhang agreed to indemnify CCBA in the event of Great Matrix's default (the "Intercreditor Agreement"). *See* Ip Decl., Ex. 12 (the "Hong Kong Decision") ¶ 12. Zhang also entered into a

pair of personal guarantees to CCBA in relation to all the outstanding amounts under the Facility Agreement and the Note Documents (the "Personal Guarantees"). *See* First Affidavit of Pui Chan Rita Sit ¶¶ 9(e) & 9(f). Under each of the two Personal Guarantees, Zhang agreed that he would "immediately on demand, pay that amount . . . as if [he] was the principal debtor." *See* First Affidavit of Pui Chan Rita Sit ¶ 11(d)(i)(b) & (c).

The US $165 million loan and the US $85 million notes would have ordinarily come due on September 10, 2021, but the Note Subscription Agreement and the Facility Agreement allowed CCBA to accelerate those debts upon certain events of default. By July 5, 2021, multiple events of default had in fact occurred. First, Suning.com defaulted on certain other bank loans totaling approximately US $1.7 billion, according to its audited financial statements published on May 12, 2021. *See* Amended Statement of Claim in the Hong Kong Action ¶¶ 27-28. This constituted an event of default under Clause 19.4 of the Facility Agreement and Clause 9.4(e) of the Note Subscription Agreement. *See id.* ¶¶ 29 & 39. Second, on June 4, 2021, Suning Appliance and Zhang's father were named as judgment debtors subject to PRC judicial proceedings, along with Suning Zhiye Group Co. Ltd., a subsidiary of Suning Appliance. *See id.* ¶¶ 30-31. This constituted another event of default under Clause 19.6 of the Facility Agreement and Clause 9.4(e) of the Note Subscription Agreement. *See id.* ¶¶ 32 & 39.

On July 5 and 26, 2021, CCBA issued notices of acceleration and demand to the borrower, Great Matrix, and to the guarantors, Suning Appliance, Zhang, and Zhang's father. *See* First Affidavit of Pui Chan Rita Sit ¶ 13. Despite the notices of demand, none of Great Matrix, Suning Appliance, Zhang, or his father repaid any of the sums due and owing under the credit facility or the notes. *See id.* ¶ 14. Not only did they fail to repay the debt upon the acceleration and demand notices, but they have *still* failed to repay the debt even though the original maturity date of

September 10, 2021, has now passed. *See id.* ¶¶ 15-16. Interest continues to accrue on the outstanding loan and notes. *See* Amended Statement of Claim in the Hong Kong Action ¶ 42B(a)(ii) & (b)(ii).

### III. A Hong Kong court enters judgment against Zhang for breach of the agreements, but he has refused to pay that judgment.

When Great Matrix, Suning Appliance, Zhang, and his father failed to repay the debts after the notices of acceleration and demand, CCBA commenced litigation in the Court of First Instance of the High Court of the Hong Kong Special Administrative Region ("Hong Kong Court") by filing a writ of summons against Zhang in Hong Kong on August 2, 2021 in CCBA's capacity as security agent, facility agent, and note trustee (the "Hong Kong Action"). *See* Ip Decl., Ex. 13.[4]

CCBA duly served Zhang with the Writ of Summons on December 14, 2021. Ip Decl., Ex. 15 ¶ 10. Zhang acknowledged service and his intention to contest the proceedings by filing an Acknowledgement of Service of Writ of Summons in the Hong Kong Court on February 11, 2022. Ip Decl., Ex. 16 at 3. About three months later, CCBA applied to the Hong Kong Court for summary judgment against Zhang. *See* Ip Decl., Ex. 17 at 4 (summary judgment summons filed May 3, 2022). Zhang participated in these proceedings and opposed the summary judgment application. *See* Hong Kong Decision ¶ 13. Primarily, Zhang argued that he was not involved in and was not aware of the refinancing transactions in connection with the Xiaodian Project and that his signatures on the Intercreditor Agreement and the Personal Guarantees were forged. *See id*. Conspicuously, Zhang did not raise these issues when he received the notice of acceleration,

---

[4] The writ of summons originally named Suning Appliance and Zhang's father as co-defendants, but CCBA filed and served a notice of discontinuance against Suning Appliance and Zhang's father on February 24, 2022. Ip Decl., Ex. 14 at 2. As discussed below, the case against Zhang continued.

but he instead, as the Hong Kong Decision noted, waited months to raise them "for the first time" in his affirmation opposing summary judgment. *Id*.

The Hong Kong Court, by written judgment of the Honorable Mr. Justice Anthony Chan, rejected Zhang's arguments and granted summary judgment in favor of CCBA. *See* Hong Kong Decision ¶ 60. As the Hong Kong Court explained, "[o]n the evidence before the court, I am unable to accept that Zhang has shown a believable defence of forgery. His evidence, assessed against the undisputed background circumstances, is contrary to inherent probabilities and common sense, and his explanations on various evidential fragilities ring hollow." Hong Kong Decision ¶ 41. The Hong Kong court entered summary judgment against Zhang on July 19, 2022, under which Zhang was ordered to pay US $254,958,050 to CCBA, as well as interest on that amount at a rate of 13% from August 3, 2021 until payment. Hong Kong Decision ¶¶ 60-61; *see also* Ip Decl., Ex. 18 ¶¶ 1-3 (the "Hong Kong Judgment").[5]

Zhang has not appealed the Hong Kong Judgment, and he can no longer do so as the prescribed time for him to appeal expired 28 days after entry of the judgment. Ip Decl., Ex. 19 ¶ 13. The day after the deadline to appeal expired, CCBA wrote to Zhang demanding immediate payment of the judgment debt. Ip Decl., Ex. 20 at 2. To date, Zhang still has not satisfied any amount of the judgment. Ip Decl. ¶ 33.

## IV.   CCBA commences further judicial proceedings in Italy and Hong Kong, and it plans to commence more.

### A.  Hong Kong Proceedings.

Because Zhang has not repaid the debt that he owes to CCBA or satisfied the Hong Kong Judgment, CCBA applied to the Hong Kong Court for an order to conduct a debtor examination

---

[5] The Hong Kong Judgment included US $254,958,050 for principal and interest due on July 5, 2021 (per Hong Kong Judgment ¶ 1), plus US $2,577,909.17 for the interest due from then until August 2, 2021, for a total money judgment of $257,535,959.17 (per *Id.* ¶ 2), plus interest on US $254,958,050 from August 3, 2021 until payment (per *Id.* ¶ 3).

of Zhang (the "Hong Kong Debtor Examination"). Ip Decl., Ex. 21 (affidavit in support of Hong Kong Debtor Examination order filed on November 10, 2022). On January 6, 2023, the Hong Kong Court granted the application, ordering that Zhang be examined in court on March 13, 2023. Ip Decl. ¶ 34 & Ex. 26. Zhang must appear at the High Court before Master Phoebe Man to "be orally examined . . . as to what debts are owing [to Zhang] and whether [he] has any and what other property or means of satisfying the Judgment" that he has in his possession. Ip Decl., Ex. 26 at 3. Zhang must also "produce any books or documents in his possession or power relating" to his assets and liabilities. *Id.*

CCBA will examine Zhang in a Hong Kong court room under oath in the Hong Kong Debtor Examination, Ip Decl. ¶ 35, which is "a cross-examination, and that of the severest kind" where the debtor must answer all questions "fairly pertinent and properly asked" and provide "all necessary particulars." *See* Ip Decl. ¶ 36 & Exs. 27 & 28. The Hong Kong court also has jurisdiction to make further orders for discovery, even after the oral examination has commenced. Ip Decl. ¶ 38 & Ex. 29 ("Order for Examination of Judgment Debtor" in Hong Kong Court). Documents and information may be used in a Hong Kong debtor examination in the same way that documents or exhibits are presented to a witness testifying in a U.S. court. *See* Ip Decl. ¶ 39. If the court finds in the Hong Kong debtor examination that the witness has dissipated assets or failed to truthfully answer questions, they may be committed to prison for up to three months. Ip Decl. ¶ 39 & Ex. 30 ("Power of the Court following examination" in Hong Kong Court). This procedure will help ascertain what assets belong to Zhang, and what debts are owed to him, so that they may be used to satisfy the Hong Kong Judgment and the debt that he owes to CCBA.

In addition, CCBA intends to apply to the Hong Kong Court for an order of committal against Zhang for contempt of court (the "Hong Kong Committal Proceedings," and together with

the Hong Kong Debtor Examination, the "Hong Kong Proceedings"). Ip Decl. ¶ 40 & Ex. 31. The basis for the committal application will be that Zhang knowingly made false statements to the Hong Kong Court in opposing the summary judgment application, including by falsely swearing that (i) he was not involved in and not aware of the refinancing transaction, (ii) he did not sign the Intercreditor Agreement and the Personal Guarantees, and (iii) his signatures on those documents were forged. Ip Decl. ¶ 41. Zhang will have the opportunity to oppose the committal proceedings and file opposing evidence. *See* Ip Decl. ¶ 42. Zhang's involvement in the refinancing transaction and his knowledge of these documents are all facts that will be considered by the Hong Kong court in the Hong Kong Committal Proceeding. Ip Decl. ¶ 43.

**B.  Italian Proceedings.**

In addition to pursuing its rights in Hong Kong, CCBA also commenced an action in Italy on July 8, 2022 to render ineffective a shareholder resolution by Inter Milan, so that the judgment debt can be satisfied, at least in part, by garnishing sums that Inter Milan owed or owes to Zhang (the "Italian Civil Proceeding"). *See* Declaration of Carlo D'Andrea ("D'Andrea Decl.") ¶¶ 7-16 & Ex. 1 (the "Italian Writ of Summons"). As alleged in the Italian Civil Proceeding, Inter Milan waived the remuneration it owed to Zhang, which under Italian law constitutes a "gratuitous act having economic value" that affects Zhang's property interests and his ability to satisfy the debt owed to CCBA. *See* Italian Writ of Summons at 30 (alleging Zhang's lack of "ownership of any assets capable of constituting property collateral"). Moreover, Zhang has allegedly conducted his financial affairs so that few assets are owned directly in his name—despite his ostentatious displays of wealth—in order to hinder his creditors. *See* Italian Writ of Summons at 35 (alleging Zhang's "very high lifestyle"). In the Italian Civil Proceeding, CCBA contends that the "waiver [of remuneration] act accepted by the shareholders' resolution . . . undermined the rights of all

[Zhang's] creditors," and thus the waiver should be invalidated. *See* Italian Writ of Summons at 29-30.

Further, because Zhang currently holds positions at Inter Milan and likely resides in Italy, CCBA intends to commence proceedings to recognize the Hong Kong Judgment in the Court of Appeal of Milan, Italy (the "Italian Recognition Proceeding"; together with the Italian Civil Proceeding, the "Italian Proceedings"). D'Andrea Decl. ¶ 17 (explaining applicable procedure). The process leading to the Italian Recognition Proceeding is well underway. On November 8, 2022, CCBA applied to the Hong Kong Court for certified true copies of the Hong Kong Judgment, as well as certificates confirming that the Hong Kong Judgment is final and not subject to appeal, which are required for the purpose of commencing the Italian Recognition Proceeding. Ip Decl., Ex. 19 ¶ 3 (request for Hong Kong Court documents); D'Andrea Decl. ¶ 18 (explaining requirements for recognition of the Hong Kong Judgment in Italy).

Meanwhile, Zhang has reportedly engaged financial advisors to explore potential transactions involving Inter Milan. *See* Ip Decl., Ex. 22 (October 2022 *Financial Times* article). According to the international press, Zhang is working with Goldman Sachs and Raine Group to search for a buyer for Inter Milan. *See id.* at 2. Goldman Sachs and Raine Group are thus likely to have documents concerning Inter Milan's operations and finances, including its financial relationships with Suning and Zhang that are relevant to the Italian Civil Proceedings.

The potential proceeds from the sale of Inter Milan may be used to repay a US $336 loan that Suning borrowed from Oaktree Capital Management Group in May 2021 to assist Inter Milan. *See* Ip Decl., Ex. 23 at 2 (May 2021 *Forbes* article). Before entering into the transaction with Oaktree Capital Management Group, Zhang reportedly discussed similar financing with Bain Capital. *See* Ip Decl., Ex. 24 at 2 (February 2021 *S&P Global* article). Bain reportedly

engaged Lazard as the financial advisor in the proposed transaction. *See* Ip Decl., Ex. 25 at 2 (May 2021 *Sempreinter* article). Like Goldman Sachs and Raine Group, these companies are likely to have documents concerning Inter Milan's operations and finances, including its financial relationships with Zhang and Suning, which will be relevant to the Italian Civil Proceedings. D'Andrea Decl. ¶¶ 16 & 20.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this application is made under a federal statute: 28 U.S.C. § 1782(a). Venue in this District is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1782(a) because the proposed subpoena respondents "reside[] or [are] found" in this District, as discussed further below.

## PARTIES

### I.    Applicant

CCBA is the plaintiff in the pending and reasonably contemplated Italian Proceedings and Hong Kong Proceedings discussed above. Ip Decl. ¶¶ 3, 34, & 40; D'Andrea Decl. ¶¶ 7 & 17.

### II.   Proposed Subpoena Respondents

As discussed above, five of the proposed subpoena respondents (together, the "Inter Milan Subpoena Respondents") likely have information about Inter Milan, including its corporate structure, its executive compensation, and its relationship to Zhang and the Suning Group:

1. The Goldman Sachs Group, Inc. ("Goldman Sachs") is a Delaware corporation listing its "Business address" with the Securities and Exchange Commission as 200 West Street, New York, NY 10282. *See* Stein Decl., Ex. 3 at 2.

2. The Raine Group LLC ("Raine Group") is a Delaware limited liability company listing its "Business address" with the Securities and Exchange Commission as 65 East 55th Street, New York, NY 10022. *See* Stein Decl., Ex. 4 at 2; *see also In re WildBrain Family Int'l Ltd.*, No. 19-mc-527 (JPO), 2020 WL 6135765, at *2 (S.D.N.Y. Oct. 19, 2020) ("Raine resides in or is found in this District.")

12

3. Oaktree Capital Management, L.P. ("Oaktree") is a Delaware limited partnership with an office at 1301 6th Avenue, New York, NY 10019. *See* Stein Decl., Ex. 5 at 2 (webpage on Oaktreecapital.com).

4. Bain Capital, L.P. ("Bain") is a Delaware limited partnership with an office at 799 Broadway, New York, NY 10003. *See* Stein Decl., Ex. 6 at 3 (webpage on Baincapital.com).

5. Lazard Frères & Co. LLC ("Lazard") is a New York limited liability company that lists its address with the New York Department of State as 30 Rockefeller Plaza, New York, NY 10112. *See* Stein Decl., Ex. 7 at 2.

Six of the proposed subpoena respondents likely have wire transfer information related to

Zhang's financial transactions (together, the "Wire Transfer Subpoena Respondents"):

1. Citibank, N.A. ("Citibank") is a national bank organized under the laws of the United States listing its "Business address" with the Securities and Exchange Commission as 399 Park Avenue, New York, NY 10043 and its "Mailing address" as 388 Greenwich Street, New York, NY 10013. *See* Stein Decl., Ex. 8 at 2.

2. BNY Mellon, N.A. ("BNY Mellon") is a national bank organized under the laws of the United States with an office at 240 Greenwich Street, New York, NY 10286. *See* Stein Decl., Exs. 9 at 2 & 16 at 2.

3. Wells Fargo Bank, N.A. ("Wells Fargo") is a national bank organized under the laws of the United States that maintains 28 branch offices in New York, New York. *See* Stein Decl., Ex. 10 at 2.

4. Bank of America, N.A. ("Bank of America") is a national bank organized under the laws of the United States that maintains 56 branch offices in New York, New York. *See* Stein Decl., Ex. 11 at 2.

5. Deutsche Bank AG ("Deutsche Bank") is a German *aktiengesellschaft* (i.e., corporation) with an office at 1 Columbus Circle, New York, NY 10019-8735. *See* Stein Decl., Exs. 12 at 3 (webpage on db.com) & 16 at 5.

6. The Clearing House Payments Company LLC ("TCH") is a Delaware limited liability company with its "registered office" at 1114 6th Avenue, New York, NY 10036-7703. *See* Stein Decl., Ex. 13 at 2 ("Terms & Conditions" webpage on theclearinghouse.org).

TCH operates CHIPS, which is the "largest private sector USD clearing system in the

world, clearing and settling $1.8 trillion in domestic and international payments per day." Stein

Decl., Ex. 14 at 2. Among the participants in CHIPS are Citibank, Bank of America, Deutsche

Bank, and affiliates of BNY Mellon and Wells Fargo. Stein Decl., Ex. 15 at 2-4.

## **ARGUMENT**

Section 1782(a) empowers federal courts to grant applicants the ability to seek discovery in the United States for use in foreign proceedings. This *ex parte* application meets each of the statutory requirements of Section 1782, and it should be granted because all four discretionary factors identified by the U.S. Supreme Court in *Intel* weigh in favor of authorizing discovery here. 542 U.S. 241, 264-65 (2004).[6]

"The analysis of a district court hearing an application for discovery pursuant to [Section] 1782 proceeds in two steps." *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022). First, the Court determines as a threshold matter whether the applicant satisfies Section 1782's three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (cleaned up).

Second, if the statutory requirements are met, a district court "may grant discovery under [Section] 1782 in its discretion." *Mees*, 793 F.3d at 297. In exercising this discretion, the Second Circuit has "repeatedly recognized Congress's intent that § 1782 be 'interpreted broadly.'" *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (quoting *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002)). District Courts should thus consider whether to grant discovery "in light of the twin aims of the statute: [i] 'providing efficient means of assistance to participants in international litigation in our federal courts and [ii] encouraging foreign countries by example to provide

---

[6] As explained above, *supra* at 1 n.1, Section 1782 applications are commonly granted *ex parte* as the Respondents may challenge discovery requests after service. *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012).

similar means of assistance to our courts.'" *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) (quoting *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)).

Specifically, the Supreme Court in *Intel* set forth four factors that courts should consider in determining whether to grant discovery, all of which favor CCBA's application. The four so-called "*Intel* factors" are:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding,' in which event 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the request is "unduly intrusive or burdensome."

*In re Accent Delight*, 791 F. App'x 247, 250-51 (2d Cir. 2019) (quoting *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018), which in turn quoted *Intel*, 542 U.S. at 264-65).

## I.   The application fulfills the statutory requirements of 28 U.S.C. § 1782.

### A.  The proposed subpoena Respondents are found in this District.

All Respondents "reside[] or [are] found" in this District. As the Second Circuit explained, Section 1782's "'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *Del Valle Ruiz*, 939 F.3d at 528. Accordingly, whether the Respondents are found in this District turns on whether (1) they are incorporated or have their principal place of business in this District, which establishes general jurisdiction; or (2) the

evidence sought arises from or relates to the entity's contacts with this District, which establishes specific jurisdiction. *See id.* at 530. As discussed below, all Respondents satisfy this test. [7]

Goldman Sachs, Raine Group, Citibank, Lazard, and TCH have their headquarters or principal places of business in Manhattan—as discussed in the "Parties" section above—and thus they are found in this District because they are subject to general jurisdiction here. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (noting corporation is subject to general jurisdiction in "its place of incorporation and principal place of business").

The rest of the Respondents—Oaktree, Bain, Wells Fargo, BNY Mellon, Deutsche Bank, and Bank of America—may not be headquartered in this District, but they have a permanent presence in this District from which they regularly transact business, and it is likely that the evidence sought by this application arises from or relates to their contacts with this District.

Oaktree and Bain have offices in this District, and these companies reportedly discussed Inter Milan's restructuring options with Goldman Sachs and Raine Group, which are based in New York. *See* Ip Decl., Exs. 22, 24 & 25 (discussing potential transactions). *See, e.g.*, *In re Degens*, No. 20-mc-237 (JGK)(RWL), 2020 WL 4252725, at *4 (S.D.N.Y. July 24, 2020) (finding, pre-*Ford*, that financial institutions reside or are found in this District because they "did business in this District with [a party in a foreign proceeding] . . . and the evidence sought by [the applicant] from those institutions is the proximate result of their contacts here"). Oaktree and Bain have purposefully availed themselves of the privilege of conducting business in this District, and the request for discovery relates to the business they conduct here: consulting about and arranging financing for businesses such as Inter Milan. *See Ford Motor Co.*, 141 S. Ct. at 1028

---

[7] Courts in other circuits have held that the plain meaning of Section 1782 requires only that the proposed respondent have a physical presence in the district. *See In re Eli Lilly & Co.*, 580 F. Supp. 3d 334 (E.D. Va. 2022). The New York City addresses of the Respondents, listed in the Parties section above, satisfy this more lenient standard as well.

(finding specific jurisdiction where lawsuit "relate[d] to" the company's conduct in the relevant states). Requiring that these companies respond to a subpoena—a far smaller burden than being haled to court in a lawsuit—would hardly offend the due process principles safeguarded by personal jurisdiction jurisprudence.

As to Wells Fargo, BNY Mellon, Deutsche Bank, and Bank of America, this application seeks discovery concerning wire transfers and correspondent banking activities. The wire transfers at issue were likely processed within New York given that each of these Respondents, or their affiliates, are participants in TCH's CHIPS system. *See* Stein Decl., Ex. 16 (listing participants). As a result, these four Respondents are found in this District for the purpose of Section 1782 discovery of wire transfer records. *See, e.g.*, *In re Banco Santander (Brasil) S.A.*, No. 22-mc-22 (ALC)(SN), 2022 WL 1546663 (S.D.N.Y. Apr. 6, 2022) (granting discovery pursuant to Section 1782 from Citibank, BNY Mellon, Bank of America, and Wells Fargo, among others); *see also Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 356-57 (S.D.N.Y. 2018) ("[T]he Banks' establishment and maintenance of correspondent accounts was sufficient to support the exercise of personal jurisdiction over the Banks.").[8]

**B. CCBA seeks discovery "for use" in foreign proceedings.**

CCBA seeks relief from the Italian and Hong Kong courts in pending and reasonably contemplated proceedings, and the evidence sought here will be "for use" in those proceedings brought by CCBA.

---

[8] Courts in this District regularly authorize discovery from financial institutions doing business in this District under Section 1782. *See, e.g.*, *In re Lane*, No. 22-mc-34 (LGS), 2022 WL 16737132, at *2 (S.D.N.Y. Nov. 7, 2022) (holding that because "[a German bank] maintains branches and conducts extensive business in New York and was served in Manhattan," it "resides (or is found)" in this District); *In re Kuwait Ports Auth.*, No. 20-mc-46 (ALC), 2021 WL 5909999, at *7 (S.D.N.Y. Dec. 13, 2021) ("Funds transfers through New York bank accounts normally constitute 'transaction of business' under N.Y. CPLR § 302(1)"); *In re Lake Holding & Fin. S.A.*, No. 20-mc-652 (RA)(KNF), 2021 WL 2581427, at *9 (S.D.N.Y. June 23, 2021) (finding various banks reside or are found in this District based on attorney declaration).

As the Supreme Court and Second Circuit have confirmed, discovery may be sought under Section 1782 for both pending *and* reasonably contemplated proceedings. *See Intel*, 542 U.S. at 243 ("The proceeding for which discovery is sought under § 1782(a) must be within reasonable contemplation, but need not be pending or imminent." (cleaned up)); *accord IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 677 (2d Cir. 2022). Here, the Hong Kong Court has already granted CCBA's application for the Hong Kong Debtor Examination and scheduled the proceeding for March 13, 2023, and CCBA has filed the Italian Civil Proceeding. Ip Decl. ¶ 34; D'Andrea Decl. ¶ 7. Moreover, CCBA plans to commence the Italian Recognition Proceeding and the Hong Kong Committal Proceeding shortly. D'Andrea Decl. ¶ 17; Ip Decl. ¶ 40. For the Italian Recognition Proceeding, CCBA has retained Italian counsel, identified the cause of action, and requested the necessary documents from the Hong Kong Court to commence the action. D'Andrea Decl. ¶¶ 17-20. For the Hong Kong Committal Proceeding, CCBA has retained Hong Kong counsel and identified the cause of action. Ip Decl. ¶¶ 41-43. These facts are sufficient to establish that these proceedings are reasonably contemplated for purposes of Section 1782. *See In re Furstenberg Fin. SAS*, 785 F. App'x 882, 885 (2d Cir. 2019) (finding reasonable contemplation on the basis that "the contemplated proceeding is more than a twinkle in counsel's eye" given identification of the "basis of the intended" cause of action) (quotation marks and citation omitted).

The evidence CCBA seeks here "will be employed with some advantage or serve some use in" each of these foreign proceedings, which is sufficient to meet the "for use" requirement under Section 1782. *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (holding that evidence sought by Section 1782 need not be "something without which the applicant could not prevail").[9]

---

[9] While each of the Italian and Hong Kong Proceedings satisfies the "for use" requirement of Section 1782, it is sufficient that just *one* of the Proceedings meets the aims of Section 1782. A court that "authorizes Section 1782

In the Italian Civil Proceeding, CCBA seeks to render ineffective Zhang's highly unusual appointment terms with Inter Milan. The Inter Milan Subpoena Respondents' documents concerning Inter Milan's financial operations and relationships to Zhang and his affiliated companies can help the Italian court resolve whether Zhang improperly structured his affairs to avoid receiving direct payments. *See, e.g.*, *In re Bank Otkritie Fin. Corp.*, No. 22-mc-50 (VSB), 2022 WL 2384169, at *3 (S.D.N.Y. July 1, 2022) ("for use" requirement met where banking records would be used to show that family moved assets to hinder creditors). In the Italian Recognition Proceeding, CCBA will seek to satisfy the Hong Kong Judgment against Zhang, particularly by targeting his assets within Italy that will be identified in discovery, such as debts owed to him by Inter Milan or any ownership interests in Inter Milan. D'Andrea Decl. ¶ 19 & Ex. 3. *See also In re Lake Holding & Fin. S.A.*, No. 20-mc-652 (RA)(KNF), 2021 WL 2581427, at *16 (S.D.N.Y. June 23, 2021) (granting discovery in aid of "the foreign proceedings in Cyprus for recognition and enforcement of the Russian judgments," which the Court held were "adjudicative in nature" (internal quotation marks omitted)). In addition, the Wire Transfer Subpoena Respondents' documents can likewise be used by the Italian court to identify Zhang's assets for the Italian Recognition Proceeding and may reveal indirect payments from Inter Milan or related entities for Zhang's benefit that are relevant to the Italian Civil Proceeding.

In the Hong Kong Debtor Examination, Zhang will appear in a court room in Hong Kong before a judicial officer of the Hong Kong Court to answer questions about his assets that can be used to satisfy the Hong Kong Judgment. Ip Decl. ¶ 35 & Ex. 26.[10] If the examination reveals

---

discovery for use in one foreign proceeding . . . need not analyze every foreign proceeding in which the petitioner is involved under the Section 1782 and *Intel* framework." *In re Sampedro*, No. 3:18-mc-47, 2018 WL 5630586, at *2 (D. Conn. Oct. 30, 2018)(citing *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017)).

[10] Such judicial proceedings are also a feature of the U.S. legal system. *See* Cal. Civ. Proc. Code § 708.110(a) (providing that "judgment creditor may apply" for "an order requiring the judgment debtor to appear before the court, or before a referee appointed by the court, . . . to furnish information to aid in enforcement of the money judgment"); Ill. Sup. Ct. R. 277(c)(3)-(4) (debtor may be ordered to appear for examination and to produce documents).

that Zhang has dissipated assets or failed to truthfully answer questions, he may be committed to prison for up to three months. Ip Decl. ¶ 39 & Ex. 30. The documents sought from the Wire Transfer Subpoena Respondents can be used in this examination, and they may reveal relevant transfers and accounts. Ip Decl. ¶¶ 37-39. Additionally, the Inter Milan Subpoena Respondents have documents that can be used to examine Zhang about his financial relationship with the soccer team. *Id*.

In the Hong Kong Committal Proceeding, CCBA will be able to introduce evidence to support its contention that Zhang knowingly made false statements in the Hong Kong Action. The Inter Milan Subpoena Respondents' documents—which likely include information about Zhang's and Inter Milan's financial and compensation arrangements in the context of potential financing and transaction planning—will assist the Hong Kong Court in determining Zhang's culpability for his false statements that he was not involved in or aware of the Xiaodian Project debt refinancing. This more than satisfies the Second Circuit standard; CCBA need "merely show[] that the materials . . . are to be used at some stage of a foreign proceeding." *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (quotation marks and citation omitted).

The Italian and Hong Kong Courts require the assistance of this Court and its discovery powers so that CCBA can recover the debt it is owed by Zhang, and thus this Application is consistent with the text and purpose of Section 1782. Zhang owes more than US $300 million to CCBA, yet he refuses to pay that debt or the judgment entered by the Hong Kong Court. While Zhang may be beyond the reach of this Court, the evidence that CCBA seeks is not. CCBA seeks this Court's assistance to gather discovery so that it can use the judicial powers available in Italy and Hong Kong to collect that debt, including by setting aside the Inter Milan shareholder resolution, examining Zhang in the March 13 debtor examination, seeking Zhang's committal for

perjury, and identifying and seizing assets to satisfy the judgment already entered by the Hong Kong Court and that CCBA will seek to have entered by an Italian court.

Consistent with the twin aims of the statute, discovery here provides an "efficient means of assistance" to the Italian and Hong Kong courts, and it encourages "similar means of assistance to our courts." *See Schmitz*, 376 F.3d at 84 (quotation marks and citation omitted). The need for reciprocal assistance is timely demonstrated by a recent U.S. federal court's issuance of a post-judgment letter of request, which sought the assistance of the Hong Kong courts to gather evidence for use in enforcing a federal court judgment. *See generally McCarthy v. Johnson*, No. 21-mc-4 (GMH), 2022 WL 16834019 (D.D.C. Nov. 9, 2022) (issuing letter of request to Hong Kong to assist with enforcement of judgment). While Section 1782 applications are most often made before a party's liability has been determined, the Second Circuit has confirmed that discovery is available even after the initial adjudication of a dispute. *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 158 (2d Cir. 2022) (holding that Section 1782 discovery could be sought in aid of English judicial proceeding to challenge an arbitration award and distinguishing *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998)).

By this application, CCBA seeks the same sort of discovery that U.S. courts permit litigants to seek, and which U.S. courts might likewise seek from Italian and Hong Kong courts through requests for judicial assistance. *See also In re Doosan Heavy Indus. & Constr. Co., Ltd.*, No. 19-mc-1638 (LDH), 2020 WL 1864903, at *1 (E.D.N.Y. Apr. 14, 2020) ("discovery sought would be used to enforce an award in judicial proceedings in Egypt, and potentially in other countries"). Each of the Italian and Hong Kong Proceedings thus satisfies Section 1782's "for use" requirement.

**C.  The application is made by an interested person in foreign proceedings.**

CCBA is the plaintiff and judgment creditor in the Italian and Hong Kong Proceedings, and the Supreme Court has held that litigants, such as CCBA here, are "[n]o doubt . . . included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256. CCBA can use the evidence sought here in the foreign proceedings, as discussed above, and thus it qualifies as an "interested person" under the statute.

**II.     All four *Intel* factors favor granting CCBA's application.**

**A.  The Respondents are not parties to the foreign proceedings.**

None of the Respondents is a participant in the Hong Kong Proceedings or the Italian Proceedings, which weighs in favor of granting discovery here. As the Supreme Court discussed in *Intel*, district courts should consider whether evidence is sought from "nonparticipants in foreign proceedings" because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Such is the case here, where the Respondents are not parties to any of the foreign proceedings, and thus the documents in their possession are likely outside the Italian and Hong Kong courts' reach. The first *Intel* factor thus weighs in favor of discovery.

**B.  The requested discovery is admissible in the foreign proceedings.**

Under the second *Intel* factor, a district court should consider "(1) whether United States assistance would offend the foreign country, and (2) whether the material sought is admissible in the foreign tribunal." *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-cv-88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (citations omitted). This factor does not weigh against discovery here. Declarations from Italian and Hong Kong counsel both indicate that their respective courts would welcome evidence gathered by this Application, and they are not aware

of any reason that Hong Kong or Italy will be "offended" by the assistance of courts in the United States. Ip Decl. ¶ 45; D'Andrea Decl. ¶ 24. Likewise, the Italian and Hong Kong counsel declarations state that the discovery sought here would be admissible in the Italian and Hong Kong courts. Ip Decl. ¶ 44; D'Andrea Decl. ¶¶ 21-23 & Ex. 4. Indeed, courts in this District have previously granted discovery in aid of both Italian and Hong Kong proceedings. *See, e.g.*, *In re O'Keeffe*, 650 F. App'x 83, (2d Cir. 2016) (affirming Section 1782 discovery for use in the High Court of Hong Kong); *In re Mariani*, No. 20-mc-152 (JGK)(GWG), 2020 WL 1887855 (S.D.N.Y. Apr. 16, 2020) (granting Section 1782 discovery for use in an Italian court).

In any event, courts should not weigh the second *Intel* factor against discovery unless there is "authoritative proof" that discovery would offend the foreign court. *Id.* at *2 (quotation marks and citation omitted). In the absence of any such evidence, the second *Intel* factor weighs in favor of granting this application.

### C. The Application will not circumvent foreign proof-gathering restrictions or other policies.

The third *Intel* factor only weighs against granting discovery if the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. This Application does not. The Italian and Hong Kong counsel declarations state that they are not aware of any such proof-gathering restrictions that would be circumvented by this Application. Ip Decl. ¶ 46; D'Andrea Decl. ¶ 25. That is all that is required under the third *Intel* factor: an applicant for Section 1782 need not establish that the requested discovery is discoverable under foreign law, or that they have exhausted the discovery tools afforded by the foreign proceeding before applying for discovery. *See In re Metallgesellschaft AG*, 121 F.3d 77 (2d. Cir. 1997) (no foreign discoverability requirement); *In re Top Matrix Holdings Ltd.*, No. 18-mc-456 (ER), 2020 WL 248716, at *6 (S.D.N.Y. Jan. 16,

2020) (no quasi-exhaustion requirement). Because there is no indication that CCBA's application will circumvent any Hong Kong or Italian discovery restrictions, the third *Intel* factor also favors CCBA's application.

### D.  The application is not unduly burdensome or overly intrusive.

The fourth *Intel* factor assesses whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure. *Mees*, 793 F.3d at 302; *see also In re Sumar*, 123 F.R.D. 467, 472-73 (S.D.N.Y. 1988) (finding that a subpoena and order issued under Section 1782 were "neither unreasonable nor oppressive" where they were "sufficiently specific" and specified "with reasonable particularity the subjects to which the documents relate"). No depositions are sought, and each of the proposed document requests is specific and limited in time to just the past few years. Particularly given that the discovery here concerns a US $300 million dispute in which Zhang has given perjured evidence and refused to pay the debt that he owes, the subpoenas are proportional to the needs of the case and not overly burdensome or intrusive under the Federal Rules of Civil Procedure.

With respect to the Inter Milan Subpoena Respondents, the proposed subpoenas seek only nine categories of documents related to Zhang, his businesses, his family, and Inter Milan. See Stein Decl., Ex. 1 (Proposed Inter Milan Subpoenas). The date range for these requests is also limited in time, beginning one year before the Suning Group's 2016 acquisition of Inter Milan. Proposed Inter Milan Subpoenas at 8. Since the nine categories of documents relate only to specific clients of these five Respondents, it should be relatively easy for them to produce the relevant documents by collecting them from the relevant deal files and custodians, whose collections can further be narrowed by search terms if necessary.

With respect to the Wire Transfer Subpoena Respondents, the Application requests routine wire transfer information, which the Wire Transfer Subpoena Respondents maintain in

the regular course of business and regularly produce in response to subpoenas of this sort. Courts in New York frequently facilitate discovery of wire transfer records from these financial institutions, including under Section 1782. *See, e.g.*, *Banco Santander*, 2022 WL 1546663.

Finally, none of the documents sought by these subpoenas would appear to be privileged or otherwise protected from disclosure. The proposed wire transfer subpoenas seek records for twenty-nine companies and eleven individuals related to this dispute, and the document requests provide additional information about each of them to help the Wire Transfer Respondents narrow their collection and avoid the burden of false positives. See Stein Decl., Ex. 2 (Proposed Wire Transfer Subpoenas) at 7-9. As a result, the final *Intel* factor weighs in favor of granting CCBA's application. Even if the Court did find an undue burden, however, the Court ought to narrow, rather than deny, the discovery sought by the Application. *Mees v. Buiter*, 793 F.3d at 302.

## CONCLUSION

Applicant respectfully requests that the Court endorse the Proposed Order, which grants CCBA permission, under 28 U.S.C. § 1782, to serve the subpoenas in substantially the form annexed to the Stein Declaration as Exhibits 1 and 2.

Dated:      January 19, 2023
              New York, New York

                                  Respectfully submitted,

                                    s/ Darryl G. Stein
                                    Darryl G. Stein
                                    darryl.stein@kobrekim.com
                                    KOBRE & KIM LLP
                                    800 Third Avenue
                                    New York, New York 10022
                                    T: +1 212 488 1200
                                    F: +1 212 488 1200

                                    *Attorney for Applicant CCBA*