N684CHIC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IN RE:  CHINA CONSTRUCTION
     BANK (ASIA) CORPORATION LTD.,
 4

 5                                        23 MC 17 (JMF)

 6                                        Telephone Conference
     ------------------------------x
 7                                        New York, N.Y.
                                          June 8, 2023
 8                                        2:30 p.m.

 9   Before:

10                        HON. JESSE M. FURMAN,

11                                        District Judge

12                           APPEARANCES

13

14   KOBRE & KIM LLP
          Attorneys for Plaintiff
15   BY:  DARRYL G. STEIN

16   LATHAM & WATKINS LLP
          Attorneys for Intervenor Zhang Kangyang and Suning Sports
17   International Ltd.
     BY:  JASON CRAIG HEGT
18        ZACHARY LANCE ROWEN

19   ORRICK HERRINGTON & SUTCLIFFE
          Attorneys for Respondent Goldman Sachs
20   BY:  NICHOLAS POLI

21   Pillsbury Winthrop Shaw Pittman
          Attorneys for Respondent The Raine Group
22   BY:  ARI M. BERMAN

23   ALEXANDER LEES
     ALEXA SAVINO
24        Attorneys for Respondent Oaktree Capital Management

25
```

N684CHIC

```
1              (Case called)

2              THE COURT:  A couple quick reminders before I take

3      appearances.  Please mute your phones, if you can, to avoid any

4      background noise.  Please make the first thing you say your

5      full name so the court reporter and I are clear on who is

6      speaking.

7              A reminder, this is a public conference just as it

8      would be if we were in open court.  I have a separate public

9      access line up and running.  I assume counsel has folks

10     listening in on that line.  If at any point in the proceeding

11     there is a problem with it, please alert me right away so that

12     we can fix the problem.

13             Finally, a reminder that this proceeding cannot be

14     recorded or rebroadcast by anyone.

15             With that, I'll take appearances, beginning with

16     counsel for the applicant.

17             MR. STEIN:  Good afternoon, your Honor.  Darryl Stein

18     of Kobre & Kim LLP on behalf of the applicant.

19             THE COURT:  Good afternoon.

20             Counsel for intervenors.

21             MR. HEGT:  Good afternoon, your Honor.  Jason Hegt

22     from Latham & Watkins for the intervenors.

23             THE COURT:  And I gather we are joined by counsel for

24     a few of the respondents.  Beginning with respondent Goldman

25     Sachs.
```

N684CHIC

1          MR. POLI:  Yes, your Honor.  Nicholas Poli, Orrick

2     Herrington & Sutcliffe on behalf of Goldman Sachs, respondents.

3          THE COURT:  And the Raine Group?

4          MR. BERMAN:  Hi, your Honor.  Ari Berman, Pillsbury

5     Winthrop Shaw Pittman, for The Raine Group.

6          THE COURT:  And, finally, Oaktree Capital Management.

7          MR. LEES:  Hello, your Honor.  This is Alex Lees for

8     Oaktree.  I'm joined which my colleague Alexis Savino.

9          THE COURT:  All right.  Am I right, that is everybody

10    who is joining on the speaking line?

11         All right.  Very good.

12         So we're here in connection with or following my order

13    of last week indicating that I thought there was some merit to

14    the argument that the subpoenas were overbroad but rejecting

15    the other challenges to the subpoenas.

16         I did receive the submission earlier today from

17    petitioner for applicant summarizing where the parties'

18    discussions stand with the proposed revisions on each side to

19    the subpoenas.

20         Now, Mr. Stein, why don't I turn it over to you.  You

21    can elaborate on your written submission and maybe address the

22    issues or frame the issues that you see remaining in dispute.

23         MR. STEIN:  Of course, your Honor.  Thank you very

24    much.

25         This is Darryl Stein from Kobre & Kim on behalf of the

N684CHIC

1    applicant.

2         Before getting into the specifics of discovery

3    disputes, I think it's helpful to begin with a bit of context

4    that is necessary in order to understand why we are here today.

5    Intervenor Steven Zhang, or Zhang Kangyang, owes more than

6    $300 million to CCBA.  That is a final unappealable judgment of

7    the Hong Kong court.  Mr. Zhang has not paid.  He has not

8    provided a disclosure in aid of enforcement.  He is apparently

9    continuing to evade service of judicial documents.  Instead, he

10   is paying counsel to oppose this application for discovery.

11        Mr. Zhang has the means to satisfy the judgment, but

12   it appears that he has structured his finances to avoid direct

13   ownership of assets.  This is addressed, among other places, in

14   the first declaration of Carlos D'Andrea which is at ECF No. 6,

15   paragraph 15.

16        There is ample evidence in the record that Zhang uses

17   nominees and holding companies to facilitate his financial

18   dealings and to hold his assets.  That's just one example.  The

19   Great Matrix and Great Momentum entities were owned and

20   controlled by Mr. Zhang in connection with the Xiaodian

21   project, and I apologize for mispronouncing that.  Those were

22   the entities that were involved in the project that led to the

23   entry of the judgment.  Similarly, there's an ample record of

24   his family assets, in particular the Suning Group and Inter

25   Milan.

N684CHIC

1          Now, we are here after the Court has granted the

2     application and denied in part the motion to quash the subpoena

3     on the basis that CCBA can seek evidence for use in a Hong Kong

4     debtor examination proceeding, an Italian judgment recognition

5     proceeding and the related enforcement proceedings there, and

6     in connection with the Italian civil proceeding which relates

7     to the revocation of a waiver of remuneration that was granted

8     in favor of Mr. Zhang by Inter Milan.  The Court entered the

9     order.  I'm not going to address the fourth proceeding, which

10    is the Hong Kong contempt proceeding, which the Court

11    ultimately did not reach a decision on.

12          So we're here in connection with those three

13    proceedings.  In following the Court's order, we have proposed

14    ways of narrowing the subpoenas.  We met and conferred with

15    intervenors' counsel, and we are now at an impasse on a number

16    of issues.

17          With respect to that, I think there's really two

18    overarching issues that we've identified.  I think the way to

19    address those is to start with the basic question of what is

20    the discovery that is relevant to these three foreign

21    proceedings.

22          Now, as the Court knows, the discovery under Section

23    1782 is governed by the Rules of Civil Procedure.  As we argued

24    in our opposition to the motion to quash, that means Rule 26

25    and here, because we are also talking about the question of

N684CHIC

1  enforcing these judgments, that's the Hong Kong debtor

2  examination and the Italian recognition proceedings, we're

3  also, in a sense, talking about Rule 69, which is the federal

4  rule that governs the enforcement of money judgments.

5       I think that's an important place to start because

6  discovery in connection with the enforcement of judgments,

7  which is exactly what we are trying to do in the Hong Kong

8  debtor examination and the Italian recognition proceeding,

9  necessarily requires broad discovery into a judgment debtor's

10  assets, and that includes assets that the judgment debtor has

11  hidden, assets that the judgment debtor has potentially

12  fraudulently transferred, alter egos, nominees.

13       The reason why we are seeking the discovery that we're

14  seeking here today —— which we have narrowed pursuant to the

15  Court's instructions in the order, first and foremost, by

16  limiting the relevant date range, instead of January 1, 2015,

17  limit it to January 1, 2018, and we've used that as a default

18  because we are willing to go shorter.  Some of the respondents

19  don't have relationships that go back that far.

20       We've narrowed also the list of companies and

21  individuals that we listed in the wire transfer subpoena, but

22  the companies that we identify on that wire transfer subpoena

23  are companies that are closely related to Zhang.  They are the

24  Great and Grand companies, as I refer to them, which seems to

25  be the naming convention the Zhang family uses for holding

N684CHIC

companies.  They are the Suning companies, and we have removed

the Suning companies that appear to be operating entities that

carry on day-to-day business, and they appear to just be

holding companies at this point.  And the Suning companies are

the companies that the Zhang family owns and controls.  So too

the Inter Milan companies, the ones that are involved in the

ownership structure of Inter Milan, which is, again, another

company that the Zhang family owns and controls.

Zhang does not dispute these connections.  He has

offered no sworn evidence disputing the allegations or the

evidence that we set forth in support of these points.  Instead

—— and I'm sure you'll hear from intervenors' counsel on this

—— he argues that these companies are irrelevant to the matter

of enforcing his personal debt.  That is not correct.

Closely related companies are relevant for at least

four reasons:  They could be nominees that hold assets on

behalf of the judgment debtor, and those assets held on his

behalf could be subject to turnover.  They could be alter egos,

which is to say that the assets of these companies can be

enforced against directly to satisfy the judgment against

Mr. Zhang, if the corporate veil can be pierced.  Fraudulent

transfers to these related companies could be voided if they

were made without adequate consideration and for purposes of

hindering or defrauding a creditor such as CCBA.  The shares in

these companies, moreover, could be seized directly if they are

N684CHIC

1    held by Zhang personally.

2         So as we are here to talk about the scope of the

3    subpoenas, and particularly the first question that was on the

4    list, which is the question about discovery for nonparties, we

5    think this is the starting point, the reason why we think the

6    scope of the subpoena that we proposed is appropriate.

7         I'm happy to move on to the relevant time period or

8    specific requests that there are still issues with, but I

9    wanted to pause there for moment in case the Court had any

10   questions.

11        THE COURT:  No, not just yet.  I think I have some

12   questions about the particulars, but maybe I should hear from

13   intervenors' counsel with respect to the broad question about

14   nominees, because I think that's one of the issues in dispute.

15        So why don't I turn to you, Mr. Hegt, on that issue.

16        MR. HEGT:  Great.  Thank you, your Honor.  Again,

17   Jason Hegt from Latham for the intervenors.

18        I think two key points here:  One is that I think, to

19   the CCBA, we don't dispute the relevance, and we didn't dispute

20   the evidence that was in the record.  I don't think, with due

21   respect, that either is accurate.  First of all, there is no

22   particular evidence in the record about any of these entities

23   other than Great Matrix and Great Momentum, which we have

24   offered to include in some of the searches.  And more to the

25   point, the subpoenas haven't been narrowed as much as it's been

N684CHIC

1      a moving target.

2             So if you were to look at Exhibit 3 to Mr. Stein's

3      letter from today, that shows the changes that CCBA made just

4      since originally asking the Court to issue these subpoenas.

5      And while they removed some entities, they added others.  You

6      can see this on the red line, beginning of page 2, they've

7      added LionRock Capital, a second LionRock entity, another

8      entity called Grand Sunshine.  Going on to page 4,

9      International Sports Capital.

10            THE COURT:  I see it.  Go ahead.

11            MR. HEGT:  So there are other names going all the way

12     through.  And I think the point that underscores the point is

13     there's been no showing at all.  So the theories that Mr. Stein

14     articulates, the theories that one might pursue in terms of

15     claims, that is a truism, but only so far as the names are in

16     some way tied.  There hasn't even been the most basic Rule

17     11 showing, if this case were here before discovery would be

18     had on any of these entities, that they are in some way tied.

19     LionRock, for example, is an entirely independent hedge fund

20     with no connection.  It's based in Hong Kong.  It just happens

21     to be another shareholder in Inter Milan.

22            We do have a disagreement on the scope of the

23     entities, and I think the in-and-out substitution sort of makes

24     the point that there couldn't possibly have been information in

25     the record to date on any of these, and there's dozens, because

1    we are still swapping them around.  I think that's point one.

2           Point two is as regards to the entities, there's one

3    judgment debtor in the Hong Kong proceeding, and that's

4    Mr. Zhang.  Other entities were in and dismissed.  There was a

5    Suning entity in that case that was dismissed, and Mr. Zhang's

6    father was a defendant that was also dismissed.  But yet we're

7    still here talking about whether they would get discovery both

8    from Suning entities, from Mr. Zhang's father, from his

9    father's current wife, his father's ex-wife.

10           And I understand the point that there may be funds

11   going to and from my client, Mr. Zhang.  That's why we offered

12   a scope that would allow them to receive wire transfer records

13   and a number of other records related to the judgment debtor.

14   But where I think we have an issue is records involving, for

15   example, Suning, which was dismissed from the Hong Kong

16   proceeding, and my client's father.  A wire transfer between

17   those two individuals has nothing to do with the judgments that

18   they've obtained.  It doesn't touch the judgment debtor in any

19   way.  And they are looking for all of the wire transfers, just

20   focusing on that subpoena for a moment, between those entities.

21   And when you add in the newly added entities, there's a lot of

22   assertion that just everyone is a nominee, and therefore we get

23   access to these documents.  There's no showing as to any of

24   that.

25           THE COURT:  Mr. Stein, do you wish to respond, and in

N684CHIC

1  particular can you address the addition of the new entities in

2  these?  It's one thing to narrow; it's another thing to

3  broaden.

4            MR. STEIN:  Of course, your Honor.

5            Looking at the Inter Milan subpoenas, it's definitely

6  a way to look at this.  I think it's also helpful to look at

7  the revised wire transfer subpoenas where we modified the list

8  and we have narrowed.  I think there were 29 originally, down

9  to now 17 even with some of the changes made to that list.

10           Now, I think one key point here is that this

11 application was filed based on the information that CCBA had in

12 January of this year.  Now another five months have gone by.

13 CCBA continues its investigation, is looking for other places

14 where Zhang has money and other ways that the judgment could be

15 enforced through the proceedings that we're discussing in Hong

16 Kong and Italy.  And so while we have adjusted some of those ——

17 some the —— we have added additional parties into the subpoena.

18 In part for the Inter Milan subpoena, we've done that in an

19 effort to try to get more specificity to the question of the

20 affiliates and associates of the parties that we've identified.

21 We know that there are a number of related parties, and we

22 tried to get more specificity to the subpoena response so the

23 searches they run can be undertaken more effectively and more

24 efficiently.

25           I think the additions here are still in the spirit of

N684CHIC

1    what the Court is asking for, which is us to focus on the

2    information that is relevant to the satisfaction of the

3    judgment.  So while we have added some of those names, we

4    clearly indicated that in the black line, that is part of the

5    efforts to focus in on what we think are going to be the most

6    relevant sources of information with respect to enforcing the

7    judgment in Hong Kong and in Italy and for pursuing the civil

8    proceeding in Italy with regard to the shareholder revocation.

9    Because the executive compensation issues and the ownership

10   structure and the relationship between Zhang and the company is

11   so important, that's one of the reasons why we focused on the

12   entities that are involved in the shareholder structure that my

13   friend on the other side mentioned.

14         THE COURT:  And where in the record is there support

15   for including the new entities?

16         MR. STEIN:  So we have not provided support on the

17   record yet.  We could certainly do so.  I think we could

18   provide an organization chart that could show the shareholder

19   structure for Inter Milan.  We had previously provided the

20   Court with —— and this is at ECF 33-5 on page 17.  It's the

21   last page of that exhibit which is subdivided.  It's a very

22   large exhibit.  It had to be filed in multiple pieces.  That

23   shows the holding company structure of Inter Milan, as I think

24   this was done at the time of one of —— this is from one of the

25   declarations in one of the Hong Kong proceedings.  We have

N684CHIC

1    developed additional information since then, and we can supply

2    the Court with additional information if that's the question.

3          THE COURT:  Go ahead.  Start with your name, please.

4          MR. HEGT:  The existence of the entity is --

5          THE COURT:  Is this Mr. Hegt?

6          MR. HEGT:  Yes.  Sorry.

7          THE COURT:  You need to state your name at the outset

8    since we are on the telephone.  Go ahead.

9          MR. HEGT:  Apologies, your Honor.

10          The existence of the entity, I think, is a far cry

11    from what they would need to show to get all of that entity's

12    wire transfer records and in the Inter Milan subpoena a whole

13    host of other records that, again, have nothing to do with the

14    judgment debtor.  There's one judgment debtor here.

15          I understand the point that they are ── this begins to

16    look like not particularly discovery in aid of any of the

17    identified proceedings and the stated reasons for needing it

18    and look a lot like wanting to find other entities in other

19    places in which claims could be brought, and we don't think

20    that's a proper use of 1782.  We've got to stick to they came

21    to the court and said there was going to be, in Hong Kong, a

22    debtor examination of Mr. Zhang, and they needed documents

23    about his ownership of entities and his transactions, assets,

24    and liabilities.  So to ask for, it's now a couple dozen

25    entities, all of their transactions with a whole bunch of

N684CHIC

1  nonparties, not Mr. Zhang, is precisely the kind of fishing

2  expedition that —— frankly, they didn't frame the request that

3  way when making it, and it's outside the scope of 1782.

4         THE COURT:  Do any respondents wish to be heard on

5  this particular issue?  I'll run down the list.

6         Mr. Poli?

7         MR. POLI:  Nothing from Goldman Sachs, your Honor.

8         THE COURT:  Mr. Berman?

9         MR. BERMAN:  Nothing from Raine, your Honor.

10        THE COURT:  And Mr. Lees?

11        MR. LEES:  Nothing from Oaktree, your Honor.

12        MR. STEIN:  Your Honor, this is Darryl Stein, if I

13  may?

14        THE COURT:  You may.

15        MR. STEIN:  I just wanted to draw the Court's

16  attention to Exhibit 4, this is document 45-4, which is the

17  black line of the proposed subpoena for the Inter Milan

18  response in particular against the Latham & Watkins proposal.

19  I wanted to draw the Court's attention to Request No. 4.  I

20  think that's the right number.  It's the bottom of page 8 in

21  the PDF.  The places where these new entities appear in the

22  Inter Milan subpoenas are limited to that request and the

23  request for KYC documents.  Unless I'm missing one, Request

24  No. 4 is one that intervenors had not listed as a disputed one

25  before and so too the changes —— obviously, the KYC document

N684CHIC

1   they dispute.  So that is an area of disagreement.  The request

2   four is one that we thought we reached agreement on, but I just

3   wanted to note that for the Court's attention.

4           THE COURT:  OK.  Can we turn to the time frame

5   question.

6           Mr. Stein, why don't I hear first from you.  And one

7   particular question on this front is, if I'm not mistaken,

8   while you've agreed to narrow the request to January 1, 2018,

9   to the present as to the Inter Milan subpoenas, I think for the

10  know-your-customer documents, it goes back further to

11  January 1, 2015.  If you can address that in particular, it

12  might be helpful.

13          MR. STEIN:  Of course, your Honor.  This is Darryl

14  Stein for CCBA.

15          The initial proposal that we had in the subpoenas was

16  for January 1, 2015.  We selected that date because the

17  acquisition of Inter Milan by the Zhang family took place in

18  2016.  The events of 2016 are relevant particularly to the

19  Italian civil proceeding where Zhang and Inter Milan have made

20  arguments that waivers for remuneration existed as far back as

21  2016.  But we note the Court's concern about the overbreadth of

22  the subpoenas on the basis of the date range, and on that basis

23  we have tried to narrow this to documents from January 1, 2018,

24  to the present.  2018 being the year that Zhang assumed a

25  formal role with the Inter Milan Football Club.  We think that

N684CHIC

1    date range is particularly relevant for the Inter Milan

2    subpoena because that ties into the question of executive

3    compensation.

4            Now, I think that the reason why we requested the KYC

5    documents back in 2015, that I think is, as much as anything, a

6    belt and suspenders to make sure that if the Inter Milan

7    respondents received the initial documents showing the true

8    name and address of the ultimate beneficial owner of some of

9    these entities that are somewhat murky in terms of their

10   ownership structure, but we know they are affiliated and

11   related to the Suning Group and Inter Milan which are

12   undoubtedly related to Zhang, that we would capture that and

13   would not be losing that information if it was given to them in

14   2015 as opposed to 2019.

15           Now, for some of the Inter Milan subpoena respondents,

16   and we haven't gotten concrete information —— although I

17   commend Mr. Poli, Mr. Lees, and Ms. Savino, Mr. Berman, I think

18   that based on information they've given so far, we would be

19   talking about going back to maybe 2022 for The Raine Group.  I

20   think that for Goldman, they're still looking at some of the

21   other things —— sorry, confirming all the relationships, but we

22   know there are engagement letters going to 2020 or 2022.  I say

23   this just because we are not trying to impose a larger burden

24   than we need, but we want to make sure that we capture the

25   relevant time period that these respondents are getting

N684CHIC

1    information with respect to Zhang's compensation with Inter

2    Milan.

3            THE COURT:  OK.  Mr. Hegt?

4            MR. HEGT:  Thank you.  Jason Hegt for the intervenors.

5            Your Honor, I think the time period here is a little

6    inextricably intertwined with the scope, and I think you just

7    heard in response to the request of that time period a reminder

8    that the Italian proceeding is about the compensation of the

9    chairman of Inter, Mr. Zhang, and that narrow issue about

10   whether or not he was receiving other compensation after the

11   club determined not to provide cash compensation.

12           What we have in this subpoena here is a request for

13   all KYC documents concerning a dozen entities going back a

14   decade, all documents about all debts taken on by the club,

15   compensation for senior managers, directors, friends,

16   relatives, financing.  I mean, it's a fairly —— again, we were

17   presented at the application stage a fairly narrow proceeding

18   in Italy regarding the compensation given to the chairman of

19   the club.  What we have before us is not tethered to that in

20   any way, either in scope or date range.  It's one of those

21   things, I suppose if one were narrower, the scope were

22   narrower, the time period might not be as objectionable.  But

23   we are in a place now where dozens, literally, of persons and

24   entities are subject to this request related to what was framed

25   initially as a fairly discrete question.

N684CHIC

| | |
|---|---|
| 1 | Mr. Stein is right, in the Italy case which is being |
| 2 | litigated now and Inter is a party and can produce some of this |
| 3 | stuff there if requested, but Inter has made a statement that |
| 4 | there were waivers of compensation going back X years.  That's |
| 5 | all still focused on the issue of compensation of the chairman |
| 6 | and not any of the topics that are in the subpoenas.  So we |
| 7 | tried to narrow both as to scope and date range, but we still |
| 8 | view this as sort of searching for something more. |
| 9 | THE COURT:  Let me once again check with respondents |
| 10 | to make sure you have nothing you wish to say. |
| 11 | Beginning with Mr. Poli. |
| 12 | MR. POLI:  Nothing for Goldman Sachs, your Honor. |
| 13 | Thank you. |
| 14 | THE COURT:  Mr. Berman? |
| 15 | MR. BERMAN:  Nothing for Raine.  Thank you. |
| 16 | THE COURT:  Mr. Lees? |
| 17 | MR. LEES:  Nothing for Oaktree, your Honor.  Thank |
| 18 | you. |
| 19 | THE COURT:  All right.  I think those were the primary |
| 20 | issues that I thought were still remaining in dispute, but let |
| 21 | me check first with you, Mr. Stein, and you, Mr. Hegt, and see |
| 22 | if there's any other issues that you wanted to bring to my |
| 23 | attention on this score. |
| 24 | Mr. Stein? |
| 25 | MR. STEIN:  Of course, your Honor.  When you say "the |

N684CHIC

|    |    |
|---|---|
| 1 | issues," are you saying as far as overall issues or the |
| 2 | specific items that are listed in our letter?  I'm not sure. |
| 3 | Mr. Hegt has others, but I'll be happy to address any of those |
| 4 | you feel have not been addressed thus far. |
| 5 | THE COURT:  I would say either or both, anything you |
| 6 | wish to be heard on.  I have the written submission that you |
| 7 | provided this morning.  If you want to elaborate on any of that |
| 8 | or you think a record needs to be made on any of it, this is |
| 9 | your opportunity. |
| 10 | MR. STEIN:  Thank you, your Honor.  I will address |
| 11 | some of those points and go through the list that's set forth |
| 12 | in ECF No. 45-1 beginning with the protective order. |
| 13 | So the disagreement between the parties is the |
| 14 | definition of the permitted proceedings in which the discovery |
| 15 | that is sought here can be used.  In short, the intervenors |
| 16 | propose that it be limited to use in the three or, I think, |
| 17 | potentially the four proceedings that were identified in the |
| 18 | application.  We have requested permission to be able to use |
| 19 | the documents marked as confidential in any proceeding related |
| 20 | to the 2020 deps. |
| 21 | The reason why we had asked for the protective order |
| 22 | to be written in this way is the nature of the work that we are |
| 23 | undertaking here to enforce the judgment, for example, in |
| 24 | connection with the Hong Kong debtor examination that we will |
| 25 | be undertaking in connection with the Italian recognition |

1    proceeding.  Because oftentimes relief needs to be sought on an

2    *ex parte* basis in Hong Kong to obtain *ex parte* injunctions, to

3    freeze assets, which are subject to very stringent showings,

4    full disclosure requirements, a showing of a strong likelihood

5    of success on the merits, *etc.*, we think that the limitation to

6    just the four proceedings and the ability to come to this Court

7    for leave to add others is not the right approach here.

8         Your Honor, I know, has addressed this issue in other

9    cases before.  We think this is one where a broader definition

10   of permitted proceedings would be appropriate.  I know that

11   Mr. Hegt disagrees.  I'm happy to let him respond now if that's

12   how the Court would like to proceed.

13        THE COURT:  Let me ask you on that score, correct me

14   if I'm wrong, but I think the way I addressed this in other

15   proceedings is to essentially limit it to the proceedings named

16   in the application but with the understanding that the

17   applicant can use it in other proceedings on consent or with

18   leave of Court.  But essentially put the onus on you to come

19   back to me and seek permission or make a showing of why it

20   should be used in another proceeding.

21        Number one, am I correct about that?  Number two, why

22   does that not make sense to proceed in that way here?

23        MR. STEIN:  Your Honor, I can't speak to what you've

24   done in every case.  I think the way you described it is the

25   way it was undertaken in the *Accent Delight* case, but I think

N684CHIC

1    the reason why the approach here should be different is that

2    the goal of CCBA in enforcing the judgments through the Hong

3    Kong debtor examination and through the Italian recognition

4    proceeding is to enforce the judgment against the assets that

5    Zhang is not paying.  The reason why we're here is because he

6    is resisting enforcement of the judgment.  So the need to be

7    able to provide this evidence to other courts, if that is the

8    ultimate need, I think, is the appropriate one.

9            If the Court were to suggest we were to go to the

10    party to produce the confidential information and ask them for

11    their consent to use it in other proceedings, I think that

12    would generally be feasible.  We have some concerns about the

13    close relationship with Mr. Zhang and some of the subpoena

14    responses.  We just don't know the details of that.

15            If the Court were looking for a compromise, I think

16    that would be a way to do it, allow the use of confidential

17    information produced by a respondent, provided the respondent

18    agrees to the use in the other proceeding.

19            THE COURT:  All right.  The next item, request for

20    copies of documents, I think.

21            MR. STEIN:  Yes, your Honor.

22            Again, in most cases with civil subpoenas, this is

23    fairly straightforward issue.  Rule 45 generally contemplates

24    that parties will receive copies of the subpoena.  The

25    intervenors, as parties here, I guess under a technical

N684CHIC

1  definition they would be entitled to the copies of the

2  discovery.

3       Now, in this case, we don't think there's a showing

4  necessarily as to why they would be entitled to this

5  information.  If Mr. Zhang has assets that we discover through

6  this process, we'll pursue them, and if he has information

7  about his own assets, but there's no need for copies to be

8  delivered to the intervenors.  And on top of that, there is the

9  possibility that Zhang will use the advance information of the

10 discovery to further dissipate his assets to guard against the

11 enforcement of the judgment.

12      THE COURT:  OK.  Mr. Hegt, why don't I turn to you on

13 both those issues.

14      MR. HEGT:  Thank you, your Honor.  Again, Jason Hegt,

15 for intervenors.

16      I'll go in reverse order.  On access to the documents,

17 I think, number one, it is the default under Rule 45.

18      Number two, and we would be happy to prepare a

19 supplemental submission to the Court on this, but there are a

20 number of cases here in the Southern District and around the

21 country that have said that the protective orders in these

22 cases must make reasonable provision for prompt access to

23 enable us to inspect the material that's been produced

24 consistent with Rule 45.

25      And the reason is fairly simple.  From our

N684CHIC

| 1 | perspective, which is this is information that CCBA says they
| 2 | are going to use to argue alter ego or some other of the
| 3 | various theories that we heard articulated, we can't be in the
| 4 | situation where we are halfway across the world and one
| 5 | document comes out and this is the document we received from X,
| 6 | it shows one wire transfer and it doesn't show the other leg of
| 7 | the transfer.  It doesn't show the full context of the
| 8 | information.  Again, not to sound like a broken record on this,
| 9 | but the scope here is so broad.  This includes a ton of
| 10 | material that is not known to my clients.  These subpoenas
| 11 | request information from a number of entities that have no
| 12 | affiliation with my client, and presumably, they are doing that
| 13 | because, of course, information from my client could be
| 14 | obtained in, for example, the Italian proceeding where we are a
| 15 | party.

| 16 |         The point is we can't be in a situation where they
| 17 | have the secret treasure trove of documents that they can
| 18 | absolutely deploy at any time, and we have no idea what's
| 19 | behind the other side of the wall.  Given the scope of what
| 20 | they are looking to obtain here, I think fairness in the
| 21 | foreign proceedings —— and that's a factor under 1782 ——
| 22 | fairness in the foreign proceedings would suggest we should be
| 23 | able to have access to that in real time.

| 24 |         THE COURT:  All right.  The other item?
| 25 |         MR. HEGT:  The other item is the use restriction, and

N684CHIC

1    I think, again, that's --

2            THE COURT:  Let me potentially short circuit this.

3    I'm inclined to rule on that to basically take the approach

4    that I took in *Accent Delight*, which is to say it's limited to

5    the proceedings that are referenced in the application,

6    certainly the three that I found qualify as proceedings,

7    perhaps the fourth, but no more than those four, unless, at a

8    minimum, I grant leave or somebody —— and we can discuss who

9    that somebody is —— provides consent.  Now, perhaps with that

10   you can address that.

11           MR. HEGT:  I don't have a lot to add there.  That

12   would be our view as well.  If we consent, the intervenors

13   consent or the Court permits it, it can be used in another

14   proceeding.  But the suggestion that they can use it in any

15   other proceeding, again, raises our concern that the scope of

16   discovery being sought here is not actually for use in the

17   three identified because it's far broader than the scope of

18   those three.  They want them for some other as yet unknown

19   proceeding, and that is the part that we find objectionable.

20   So your prior approach is exactly what we're asking for.

21           THE COURT:  Mr. Stein or Mr. Hegt, anything else on

22   these two issues?

23           MR. HEGT:  No, your Honor.

24           THE COURT:  Mr. Stein, anything you want to add on

25   those two issues?

N684CHIC

1          MR. STEIN:  No.  I think the only question that I

2     think remains on the approach that you mentioned is that

3     question about how consent will be granted or whether consent

4     will be sufficient.  I'm happy to speak to that now or to move

5     on to the open questions for the subpoenas.

6          THE COURT:  Why don't you speak to that now, and then

7     we'll move on.

8          MR. STEIN:  Intervenors have asserted objections on

9     behalf — with respect to the discovery of a number of parties.

10    We think that all those parties are related to Mr. Zhang and

11    that would be the basis for him to raise those objections.  We

12    think that the use of this information in the foreign

13    proceedings is ultimately about this question about enforcing

14    of the judgments, and the Hong Kong debtor examination goes to

15    identifying those assets and also providing penalties if

16    Mr. Zhang dissipates them, if he fails to pay the judgment

17    although he's able to do so, if he fails to make full

18    disclosures, etc., and so too in Italy.  That is our focus and

19    that is the reason why we are seeking discovery here.

20          The reason why we think that the proposed — requiring

21    us to seek leave of the Court or consent from the intervenors

22    would create an issue is that if there are, for example, assets

23    that we've identified in Hong Kong, now this is still related

24    to the enforcement of the Hong Kong judgment, ultimately, the

25    Hong Kong debtor examination will be used to gather evidence

N684CHIC

```
 1    that could be used for other steps for enforcement in Hong

 2    Kong.  But if there are assets that we identify that are

 3    subject to the jurisdiction of the Hong Kong courts, a

 4    requirement that we go to the intervenors and ask for

 5    permission to use that evidence would undermine our ability to

 6    seek the relief that we need from the Court.

 7            Being able to go to the respondents to ask for their

 8    permission to use it, I think, would go some way to addressing

 9    our concerns.  But we think that is a very real risk here when

10    we have a judgment debtor with a $300 million debt outstanding

11    who is erecting barriers to us trying to obtain that.  That's

12    the reason why we think this situation is different than Accent

13    Delight and why, at least at a minimum, that approach of

14    requiring consent from the producing party rather than the

15    intervenors is appropriate.

16            THE COURT:  And what say you to a compromise, which is

17    allowing you, with respondent's consent but without

18    intervenors' consent, to seek some form of emergency relief in

19    a new proceeding but not allowing you to use it for any other

20    purpose absent intervenors' consent or leave of court?

21            MR. STEIN:  I think I understand the proposal.  If the

22    proposal is that we could use the information in another

23    proceeding with the consent of the producing party provided

24    that we seek relief from this Court to expand the protective

25    order at the same time that we give notice of that proceeding
```

N684CHIC

1  to Zhang or the other parties, I think that would work for us,

2  yes.

3          THE COURT:  I'm not sure that's exactly what I was

4  saying.

5          But in any event, Mr. Hegt, your thoughts?

6          MR. HEGT:  Yes.  Thank you, your Honor.

7          I think our concern there is that this proceeding was

8  commenced on an *ex parte* basis for a Potemkin emergency.  It

9  was the supposed debtor examination that was going to occur

10  within days, and so it was commenced without notice until we

11  intervened.  There was a hearing two months ago where it was

12  adjourned *sine die*, and as of now there's no date for it.  And

13  so I just worry a little about the sort of eye of the beholder

14  about what an emergency is and would think that the —— the

15  standard approach of the information was produced here, they

16  asked for it for these specific proceedings, and to have a sort

17  of roving free license to use it for anything else around the

18  world they might want to do just really draws back to all those

19  cases to say this is not supposed to be a fishing expedition

20  for other claims you might want to bring.  That's almost

21  exactly what Mr. Stein just said.  They may get the documents

22  and realize they want to commence another suit somewhere else.

23  If that's where we are, that's outside of what 1782 should be

24  doing.  So at a minimum, we would like to be able to be heard

25  on that and to have notice.

N684CHIC

1    THE COURT:  Any additional issues?  I think there were

2    subpoena-specific issues, Mr. Stein.

3    MR. STEIN:  Thank you, your Honor.

4    I think we can move on to the Inter Milan subpoenas.

5    I think the wire transfer subpoena issues were largely

6    addressed as we talked about the nonparty discovery issues,

7    unless your Honor has any questions on that.

8    THE COURT:  No.  Go ahead.

9    MR. STEIN:  So with respect to the Inter Milan

10    subpoenas — and I'm not sure which of the exhibits your Honor

11    would find most helpful to look at.  We provided a number of

12    black lines so your Honor would be able to look at whatever

13    would be most helpful.  If we're just looking at the proposed

14    subpoenas, and I'm looking at Request No. 1 in the Inter Milan

15    proposed subpoena, which is 45-2 at page 8.

16    So the first request, which is all documents

17    concerning Zhang Kangyang, Great Momentum, or Great Matrix,

18    your Honor, this is — we included this request, our

19    understanding being that the Inter Milan respondents have

20    business relationships and are advising the Inter Milan

21    entities and various owners of Inter Milan, being the corporate

22    entities, and were not working for Zhang Kangyang personally or

23    Great Momentum or Great Matrix.  If the subpoena respondents

24    were undertaking this work or doing work directly for Zhang

25    Kangyang or these two entities which are directly related to

the 2020 dispute, we think those documents are very much
relevant because the nature of the business undertaken by each
of the subpoena respondents is entirely in the matters of
financial advising, investment banking, etc.  And the documents
they would have concerning Zhang Kangyang or Great Momentum or
Great Matrix would not be ones that are of a personal or
sensitive nature.  They would be related to Zhang Kangyang's
finances and businesses.  So if there are documents that relate
to these three topics, that's why we requested all documents
and communication concerning them.  Mr. Hegt disagrees.

I can carry on to the next request unless the Court
would like to pause there.

THE COURT:  Why don't you address all of them and then
I'll turn to Mr. Hegt.

MR. STEIN:  Requests two, three, and six, we proposed
a way of narrowing this down.  Again, I'm just going to take a
moment to look at the black line showing the changes to the
intervenors' proposals.  There is an agreement as to Request
No. 4, which is requests concerning Inter Milan's ownership,
shareholder interest, and corporate management structure.  And
this is now, as revised in request three, this is a corollary
to that, which is all documents and communications concerning
transactions of shares or other direct, indirect, or derivative
ownership interests in Inter Milan including contemplated
pending transactions, *etc.*

N684CHIC

1          The reason why we think this is relevant is that the

2     corporate and organizational structure of Inter Milan is a

3     central issue in the Italian civil proceeding and because the

4     Italian civil proceeding goes to the question of other sources

5     of remuneration that Zhang Kangyang is getting, either directly

6     or indirectly, because it's not, as Mr. Hegt said, other

7     compensation he's receiving.  It's not purely whether he is

8     getting the money or whether he's getting paid in some other

9     form; it's also whether that money is being paid to other

10    people on his behalf.

11         If that money is coming from or is related to or is in

12    other ways connected with the ownership structure of Inter

13    Milan and potentially is increasing the shareholdings or

14    issuance of shares or things like that, we think those are very

15    much within the scope of what we need for the Italian civil

16    proceeding.  So if there are documents with respect to the

17    ownership interest held by Zhang himself or by his family that

18    themselves are subject to execution, that's relevant to the

19    Hong Kong debtor examination and Italian recognition

20    proceeding.

21         With respect to request Five, the nature of the

22    disagreement here is as to whether the discovery should be

23    limited to compensation paid to Zhang Kangyang or should be

24    more broadly to senior managers, directors, friends, relatives,

25    *etc.*, thereof.  In the Italian civil proceeding, one of the

N684CHIC

1    arguments that John raised in his statement of defense is that

2    these waivers of remuneration go back to 2016.  They have been

3    granted to other people in the executive structure of Inter

4    Milan.  And for those reasons, we think those documents go to

5    the core issues that are going to be litigated in Italy, and

6    that's why we propose this approach as opposed to the one set

7    forth by the intervenors.

8          With request seven, there is just one change here,

9    which is striking of Great Matrix or any of their affiliates

10   and associates.  Again, for the same reasons as Request No. 1,

11   we think our approach is the correct one here.

12         Finally, with respect to Request No. 9, the

13   know-your-customer documents and KYC communications, we think,

14   are a relatively discrete set of documents that would be

15   maintained by the subpoena respondents.  They go directly to

16   the questions of ultimate beneficial ownership.  If it is the

17   case that Zhang Kangyang has nothing to do with these entities,

18   that — that may be the case.  Mr. Zhang has not produced a

19   declaration here.  He's not given any disclosure that would

20   allow us to take these companies off the list, and that's the

21   reason we're trying to understand the know-your-customer

22   information there.

23         Those are the topics we had on our list, your Honor.

24         THE COURT:  On No. 7, you converted to the arguments

25   that you made at Request No. 1, but any affiliates or

N684CHIC

1  associates is significantly broader than just Great Matrix.

2  Can you speak to that.

3          MR. STEIN:  Yes, your Honor.  So one of the things

4  that we tried to do as we revised the subpoena is to more

5  narrowly define the associates, affiliates, and advisers to be

6  anyone or any entity that the respondent knows or has a

7  reasonable basis to believe is associated with that person or

8  entity.

9          With respect to Zhang Kangyang and Great Matrix, if

10  there is another entity that Zhang Kangyang is known to

11  directly own, we think that would be captured within it.  This

12  is a more detailed conversation than I think Mr. Hegt and I

13  had, but I think one change we could make to it is Zhang

14  Kangyang or any entity that Zhang Kangyang owns or controls, I

15  think that would work for us.  That's what we are aiming to get

16  here.

17          THE COURT:  And on paragraph 5 in particular, or

18  Request No. 5, I think it is, that strikes me as rather broad,

19  that is to say, the request for all communications and

20  documents concerning not just compensation paid to Zhang

21  Kangyang but compensation for senior managers, directors, and

22  friends, relatives, or other known associates of them.  Can you

23  address that?

24          MR. STEIN:  Of course, your Honor.  And I think the

25  starting point for this request is the nature of the subpoena

N684CHIC

respondents and the types of documents and information that
they are going to have.  This is not a subpoena directed to
Inter Milan itself, which would undoubtedly have a huge volume
of documents related to these questions.  Because the subpoena
respondents are advising on strategic transactions for the
Inter Milan company and for their advisers, the documents that
they are likely to have with respect to this request, we think,
are going to be ones that set out, for example, the lists of
compensation for key employees, diligence information about who
those key people are and what their compensation is.  And if
there's communication back and forth with the subpoena
respondent and Inter Milan about that, that would again be at
the level of generality of who is getting the compensation, who
is Inter Milan putting on these lists, what compensation are
they getting, how are they getting that compensation.  It's not
here is the W-2 for this year or these are all the 1099s we are
giving to individual employees.  Like I said, it's targeted to
senior managers, directors, friends, relatives, or other known
associates of those senior managers and directors.

        So we think that the nature of the information that
subpoena respondents are likely to have will narrow this
considerably.  Like I said, if this was to Inter Milan, we
agree this would be a very broad request.

        One thing we haven't talked about on this call very
much is the ongoing meet and confers we are having with the

N684CHIC

```
 1    subpoena respondents and trying to find an appropriate scope of
 2    discovery.  A lot of those discussions thus far have focused on
 3    central deal files that are being maintained.  The documents we
 4    would expect to find there are the sorts I just listed: lists
 5    of key employees, diligence checklists, *etc*.
 6              If we are moving to email collection or review —— and
 7    we're very much discussing with the subpoena respondents, and
 8    those discussions have been going on for some months, although
 9    they've been paused somewhat as they have waited for guidance
10    from this Court on what the appropriate scope of discovery
11    would be —— we are working to find an efficient solution to
12    getting that information.
13              THE COURT:  All right.  Mr. Hegt, do you want to
14    address these various issues?
15              MR. HEGT:  Yes, your Honor.
16              I'll maybe just pick up where you left off on request
17    five.  We have come very far from the stated need when CCBA
18    came to the court.  It's ECF 34 at 4.  They said they were
19    looking for evidence showing that Mr. Zhang acted to conceal
20    assets or indirectly received compensation or emoluments from
21    Inter Milan.  So we are talking about his compensation: direct,
22    indirect, emoluments, whatever it is.  A request for all the
23    files regarding all of these individuals, Inter Milan is not a
24    party here.  They are a party in the lawsuit that we are
25    talking about.  So I think it is a little bit backwards to
```

N684CHIC

think that —— I don't think this is particularly relevant, but no one on this telephone call is going to be the one to decide that.

Inter Milan is a party to the Italian case, and this is an attempt to get here, on no record, no evidentiary showing that any of this is relevant, to get this Court to give party discovery from nonparties.  They've said as much on this call that the hope is the subpoena respondents have Inter Milan's records, and this is a backdoor way to get Inter Milan's records about all these people who —— again, the stated need of this Italy proceeding was about Mr. Zhang compensation, not all of these other individuals, and certainly not every document about all these other individuals.

I guess, just to go through the list as quickly as we can, on request one, all documents and communications concerning, again, departs from what the proffered scope of these foreign proceedings were.  These are large financial institutions that have complex relationships with the three entities listed.  For example, Suning is a public company. It's traded on the Shenzhen Stock Exchange.  It has significant operations, and Mr. Zhang is an officer of that company.  A document about Suning's operations or the notes that he is an officer of various Suning entities, does that come within all documents and communication concerning?  We just felt this was a catchall that, again, in light of the presentation and the

N684CHIC

proffer that these were specific needs in the foreign

proceedings, that this is quite broad, and whatever the

legitimate needs are can be addressed through the more specific

request below.

THE COURT:  OK.  Anything else?

MR. HEGT:  On two, I'll try to take maybe three —— the

numbers look a little —— I think it's currently three, four,

and seven.  Again, I think the focus of the debtor examination

has been Mr. Zhang.  If the question is what is his ownership

stake in Inter Milan, what is the current ownership structure

of Inter Milan, what does he own, what entities is it through,

I understand the need for that, again, both because it ties

back to the judgment debtor is Mr. Zhang, number one, and

number two, I understand that as tied to the stated purpose of

this application.  When we start talking about all documents

about any transaction that the club, a nonparty but a party to

another proceeding where they could get it and are

intentionally not asking, all documents about that entity's

debt financing, capital markets, transactions covering a

six-year period is, again, just, in our view, well beyond what

was articulated as a need and appears to be an attempt to

circumvent.  Inter Milan, of course, has all that.  That

request, if it were appropriate, could be made to the Italian

court.  There's no reason we are talking about it here.  And

our view is that this should be limited to the stated need in

N684CHIC

1    the application.

2              THE COURT:  All right.  Anything else, Mr. Stein?

3              MR. STEIN:  Yes, your Honor.  I just wanted to go back

4    to two things that Mr. Hegt mentioned.  And this is Darryl

5    Stein of Kobre & Kim on behalf of CCBA.

6              With respect to request one, Mr. Hegt said that there

7    are complex relationships between Zhang Kangyang, Great

8    Momentum, Great Matrix, and the subpoena respondents.  We,

9    frankly, don't know what those are.  That's why we are taking

10   this discovery.  If Zhang had come to this Court, if he

11   produced disclosure in the Hong Kong debtor examination, we

12   would be able to tailor these requests, if there are ones that

13   are out there.  What we heard from respondents thus far is we

14   were referred to engagement letters with Suning Sports, I think

15   it was, and I apologize, and I think with respect to Oaktree,

16   it was an intermediate holding company.

17             If there were a certain burden here, I think the Court

18   would rightly ask them what is the proffer here as to what this

19   burden is?  Now, of course, this is not a burden on the

20   intervenors but on the respondents, and that's why we were

21   conferring with them on that.  We had those conversations for

22   months.  I had my first conversation with intervenors' counsel

23   on this scope much more recently.  That's precisely why we're

24   here.  And so for the intervenors to talk about how —— well, if

25   we were seeking for discovery about the shares that Zhang owns,

N684CHIC

1    Zhang has this information.  Zhang knows what we are looking

2    for.  And I think that's a very important thing to keep in mind

3    as we think about what the appropriate scope of discovery here

4    is and what the nature of these objections are.

5          So I think that is just an overarching point that I

6    wanted to make that ties back with what I started with, which

7    is there is a $300 million unpaid adjudicated, final, and

8    unappealable judgment in Hong Kong.  Zhang is doing everything

9    in his power to avoid the enforcement of that judgment through

10   the Italian recognition proceedings, through the Hong Kong

11   debtor examination, and through the Italian civil proceeding,

12   and that's why we seek the discovery that we seek here, your

13   Honor.

14          THE COURT:  All right.  Mr. Hegt.

15          MR. HEGT:  Thank you, your Honor.

16          On that point, what I would say is two things:  One,

17   and mindful of how much of your time we've taken, but the

18   request for all documents concerning these individuals, my

19   point is that it expands to all of the entities.  It is so

20   lacking in definition as to encompass — and I don't know

21   whether that's intended or not, but it is not tied to any of

22   the stated needs in the proceedings it encompasses, therefore,

23   this very large set of entities.

24          I mentioned that Suning is publicly traded.  There is

25   a great deal of information in the public disclosure about

1   Suning because it is a public company on the Shenzhen Exchange.

2   It has relationships with various financial institutions.  And

3   this, as read, all documents concerning Mr. Zhang, could be

4   read to include anything about Suning because he is an officer.

5   It's not additive.  It appears to be a bit of a catchall.

6          And I think the second point, this not the forum to

7   address the underlying dispute, although I think it is relevant

8   here that CCBA, they are not entirely without information.  As

9   they said in their papers, Suning is a very large, prominent

10  business in China.  They know exactly where to find them.

11  There's 10,000 stores with the name on the door.  There's a

12  gigantic building in Beijing, a skyscraper with the name on the

13  top.  They are choosing not to pursue any of those known

14  assets, and we can all speculate about why.

15         But this is a state-owned bank that is choosing to go

16  in search of offshore claims, and so there are all sorts of

17  legitimate interests in making sure the discovery here is

18  tailored to the stated need that was put before the Court.

19         THE COURT:  Let me check with respondents to see if

20  there's anything you wish to say before I rule on some of these

21  issues and wrap up.

22         Mr. Poli?

23         MR. POLI:  No, your Honor, not from Goldman Sachs.

24         THE COURT:  Mr. Berman?

25         MR. BERMAN:  No.  Thank you, your Honor.

N684CHIC

1              THE COURT:  Mr. Lees?

2              MR. LEES:  Your Honor, this is Alex Lees for Oaktree.

3         I only wish to echo support for your Honor's proposal

4    on the protective order and the definition of permitted

5    proceedings.  Oaktree has engaged in meet and confers with the

6    applicant and has reached an agreement in principle, but part

7    of that agreement is to produce some documents that Oaktree

8    views as competitively sensitive and, if it's going to produce

9    those, wants to have clarity on who is going to be able to

10   access them, which courts might be involved, which parties

11   might be involved.  And open-ended permission to use the

12   documents in other proceedings and share them with the other

13   parties gives us great concern.  So Oaktree would support the

14   limitations that have been discussed by the Court today.

15             That's all, your Honor.

16             THE COURT:  All right.  Let me rule on what I

17   understand to be the remaining disputes.

18             First, to the protective order, I am going to limit

19   use of the documents to the four proceedings, including the

20   Hong Kong proceeding which I did not reach a decision on in my

21   prior opinion, but I will include that.  I'll limit it to those

22   four unless applicant obtains the consent of both the producing

23   party and intervenor or gets leave from me.  And I think, to

24   the extent that there is a showing and I'm persuaded that it is

25   justified, that leave can be obtained on an *ex parte* basis.  In

N684CHIC

1    the event there is concern about dissipation, or what have you,

2    I suppose the showing or leave can be obtained in that manner.

3           I think it addresses the concerns Mr. Stein had

4    articulated.  But the bottom line is I'm not going to give

5    open-ended permission to use the material in any and all

6    proceedings, just the four that were subject to the application

7    in the first place.

8           As for the copies of documents, there, too, I will

9    basically stick with the default rule, which is that

10   intervenors are entitled to copies of anything that is produced

11   pursuant to the subpoenas.  I don't think a showing has been

12   made to deviate from that default.  I suppose to the extent

13   that the applicant wishes to make an application and make a

14   showing, I'll leave open the possibility that you can, but the

15   bottom line is you have not justified deviating from the

16   standard rules on that score.  So I'll rule with intervenors on

17   that issue.

18          As to other issues which are really sort of the scope,

19   breadth of the subpoenas, I agree basically in all respects

20   with Mr. Stein.  It seems to me that the disputes here and

21   Mr. Hegt's position in particular stem from an overly narrow

22   view of what the foreign proceedings are, and it really doesn't

23   give credence to what I think is going on here, which is

24   Mr. Zhang's efforts to evade enforcement of the judgment that

25   was obtained against him.  It strikes me that given the nature

N684CHIC

```
 1    of that judgment, given the nature of these proceedings, the
 2    discovery being sought in the narrowed subpoenas is both
 3    relevant and proportional, that it's certainly not
 4    disproportionate to what those proceedings are.
 5            The bottom line is I agree.  And I should say,
 6    relatedly, as I think I said in the opinion last week, there's
 7    no exhaustion requirement.  So to the extent that the argument
 8    proceeds from the premise that, for example, some of these
 9    documents could be obtained from Inter Milan in the Italian
10    proceeding, that doesn't, to me, justify denying the request
11    here.
12            So bottom line is I'm persuaded that the subpoenas, as
13    narrowed in applicant's revised submissions of earlier today,
14    address the concerns that I have raised in the opinion of last
15    week regarding breadth, and for that reason will deny the
16    motion to quash as modified by the submissions earlier today
17    and subject to the rulings that I made on the protective order.
18            I should say that is obviously all without prejudice
19    to whatever further objections or discussions there are between
20    applicant and respondents with respect to narrowing.  To the
21    extent that those discussions result in any disputes, I'll
22    retain jurisdiction to adjudicate those disputes, but hopefully
23    you guys can work those out.
24            Obviously, that all leaves some work on your part, for
25    example, to memorialize that in the protective order, and what
```

N684CHIC

1    have you, but tell me if there's any further guidance you need

2    from me or if that gives you what you need.

3          Mr. Stein?

4          MR. STEIN:  Thank you, your Honor.

5          Just a question with respect to the protective order

6    provision.  I want to make sure that I understand what the

7    Court is contemplating.  It sounds like a reasonable proposal,

8    which is that documents can be used in additional proceedings

9    if both the intervenors and the producing party consent or, in

10   the alternative, if relief is granted by the Court, which can

11   be sought on an *ex parte* basis.

12         THE COURT:  To be clear, if leave is granted by the

13   Court and if you can persuade me that is appropriate to seek on

14   an *ex parte* basis, then you can, as with anything, seek it on

15   an *ex parte* basis.  I'm not granting you empty blanket leave to

16   pursue leave on an *ex parte* basis.  You would have to persuade

17   me that there is a good reason to do so.

18         MR. STEIN:  Got it.  I understand.  We will make sure

19   that we find a way to do that in a way —— to draft the order in

20   a way that contemplates that we will need to seek your

21   permission to seek relief on an *ex parte* basis.  I don't have

22   in mind how I'm going to do that right now, but I'm sure I'll

23   put my head together with the other folks who are working on

24   this, and we will make sure we get something that manifests

25   what your Honor is contemplating, which, to be clear, will not

N684CHIC

| | |
|---|---|
| 1 | give us *ex ante* permission to seek *ex parte* relief but will |
| 2 | require us to make a showing. |
| 3 |     THE COURT:  All right.  Mr. Hegt —— Mr. Stein, go |
| 4 | ahead. |
| 5 |     MR. STEIN:  I was going to, just for the avoidance of |
| 6 | doubt, the Court had entered a stay pending a resolution on the |
| 7 | motion to quash.  Our understanding had been that stay would |
| 8 | continue until the Court had ruled on the scope of the |
| 9 | subpoenas.  Now that the Court has ruled on the scope of the |
| 10 | subpoenas, am I correct in understanding that stay is lifted? |
| 11 |     THE COURT:  You are correct indeed. |
| 12 |     MR. STEIN:  Thank you, your Honor. |
| 13 |     THE COURT:  Mr. Hegt. |
| 14 |     MR. HEGT:  Thank you, your Honor. |
| 15 |     Just one question to perhaps address something else |
| 16 | that may end up coming before the Court.  In the Inter Milan |
| 17 | subpoena, on request two, the request called for all documents |
| 18 | concerning and then transfer of address, including completed, |
| 19 | pending, and contemplated transactions.  We had understood that |
| 20 | to mean contemplated, pending as of some date certain, and this |
| 21 | is not imposing a limitless obligation for any transaction that |
| 22 | Inter Milan might ever engage in.  This is, as with any |
| 23 | subpoena, as of the subpoena date, anything that was pending, |
| 24 | contemplated.  It's not some sort of rolling, open-ended |
| 25 | obligation in response to these subpoenas. |

N684CHIC

| | |
|---|---|
| 1 | THE COURT:  OK.  That seems reasonable to me. |
| 2 | Mr. Stein? |
| 3 | MR. STEIN:  Yes, your Honor. |
| 4 | I think we can define the contemplated transaction and |
| 5 | put a line in the sand of today.  If that works, it seems to |
| 6 | grant the certainty we need for both sides. |
| 7 | THE COURT:  All right.  That seems right to me. |
| 8 | Anything else, Mr. Hegt? |
| 9 | MR. HEGT:  No, your Honor.  Thank you. |
| 10 | THE COURT:  Let me run through the respondents. |
| 11 | Mr. Poli? |
| 12 | MR. POLI:  No, your Honor.  Your point earlier about |
| 13 | this being without prejudice to whatever further objections we |
| 14 | may have pending the results of any meet and confers addresses |
| 15 | our concern.  Thank you. |
| 16 | THE COURT:  All right. |
| 17 | Mr. Berman? |
| 18 | MR. BERMAN:  Likewise, your Honor.  Thank you for your |
| 19 | time. |
| 20 | THE COURT:  And Mr. Lees? |
| 21 | MR. LEES:  Nothing further, your Honor. |
| 22 | THE COURT:  All right.  As noted, I will retain |
| 23 | jurisdiction to adjudicate any further disputes arising from |
| 24 | this or relating to it.  Hopefully, you have what you need from |
| 25 | me at least for the moment. |

N684CHIC

1          And with that, we are adjourned.  Thank you for your

2    patience and your helpful argument.

3          Have a good day.

4          (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25